**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**QUALLS & WORKMAN**
Daniel H. Qualls (State Bar #109036)
Robin G. Workman (State Bar #145810)
244 California Street, Suite 410
San Francisco, CA 94111
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

Additional Counsel listed on signature page

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LOUIE, an individual, VALERIE STRINGER, an individual, MARK STEELE, an individual, and DAN ROYSE, an individual, JULIE TEAGUE, an individual, and JERAHMEEL CAPISTRANO, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, and Does 1 to 10,<br><br>Defendants. | CASE No. 08 CV 0795 IEG RBB<br><br>**FIRST AMENDED** CLASS AND COLLECTIVE ACTION COMPLAINT FOR:<br><br>1. FAILURE TO PAY REGULAR AND OVERTIME COMPENSATION IN VIOLATION OF 29 U.S.C. § 201, *et seq.*;<br>2. FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF CAL. LAB. CODE §§ 510, 515.5, 551, 552, 1194 AND 1198, *et seq.*<br>3. FAILURE TO PROVIDE WAGES WHEN DUE IN VIOLATION OF CAL. LAB. CODE § 203;<br>4.  FAILURE TO PROVIDE MEAL AND REST PERIODS IN VIOLATION OF CAL. LAB. CODE § 226.7 AND 512;<br>5.  FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENTS IN VIOLATION OF CAL. LAB. CODE § 226; and,<br>6.  UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*<br>7.  LABOR CODE PRIVATE ATTORNEY GENERAL ACT [Labor Code § 2698]<br><br>DEMAND FOR A JURY TRIAL |

Plaintiffs Valerie Stringer, Donna Louie, Mark Steele, Dan Royse, Julie Teague, and Jerahmeel Capistrano ("PLAINTIFFS") alleges on information and belief, except for their own acts and knowledge, the following:

**NATURE OF THE ACTION**

1.     PLAINTIFFS bring this class action on behalf of themselves and a California class consisting of all individuals who are or previously were employed by Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser Foundation Health Plan") in a staff position as a Product Specialist, Business Application Coordinator, and/or Site Support Specialist, and in other similarly situated positions during the Collective Class Period and California Class Period as hereinafter defined (the "CLASS").

2.     Individuals in these positions are and were employees who are entitled to be classified as non-exempt, entitled to be paid for regular and overtime compensation, entitled to receive meal and rest period breaks, entitled to prompt payment of amounts that the employer owes an employee when the employee quits or is terminated, and entitled to other compensation and working conditions that are prescribed by law.

3.     Although Kaiser Foundation Health Plan requires their employees employed as Product Specialist, Business Application Coordinator, and/or  Site Support Specialist Staff Members, and other similarly situated positions, to work more than eight (8) hours a day, forty (40) hours a week, and hours on the seventh (7th) consecutive day of a workweek, as a matter of policy and practice, Kaiser Foundation Health Plan consistently and uniformly misclassifies these employees as exempt and denies them the required overtime and other compensation that the law requires.

4.     In this action, PLAINTIFFS, on behalf of themselves and the CLASS, seeks to have all Product Specialist, Business Application Coordinator, and Site Support Specialist staff members reclassified as non-exempt and recover all the compensation that Kaiser Foundation Health Plan was required by law to provide, but failed to provide, to PLAINTIFFS and all other CLASS members.

5.     PLAINTIFFS and all Product Specialist, Business Application Coordinator, and

1   Site Support Specialist Staff Members performed the same primary duties, which consist of

2   installing, configuring, testing, troubleshooting, and providing technical support in connection with

3   computer applications, networks, and hardware.  The primary objective of the PLAINTIFFS and all

4   other Product Specialist, Business Application Coordinator, and Site Support Specialist Staff

5   Members is essentially to provide technical support and maintain and test Kaiser's computer system

6   by various systematic routines to see that particular pieces of computer equipment or computer

7   applications are working properly according to the specifications designed by others.  These job

8   duties, performed by every Product Specialist, Business Application Coordinator, and Site Support

9   Specialist Staff Member, are examples of work that lacks the requisite exercise of discretion and

10  independent judgment within the meaning of the administrative exemption.  PLAINTIFFS, as well

11  as every other Product Specialist, Business Application Coordinator, and Site Support Staff

12  Member, performs duties that do not involve, with respect to matters of significance, the

13  comparison and the evaluation of possible courses of conduct, and acting or making a decision after

14  the various possibilities have been considered as required by 29 C.F.R. § 541.202(a).

15

16                                  **JURISDICTION AND VENUE**

17          6.      This Court has jurisdiction over PLAINTIFFS' federal claim pursuant to

18  28 U.S.C.§1331, federal question jurisdiction, 29 U.S.C. § 219, the Fair Labor Standards Act, and

19  28 U.S.C. § 1367, supplemental jurisdiction of state law claims.

20          7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Kaiser

21  Foundation Health Plan, Inc. is a corporation that (i) is subject to personal jurisdiction in this

22  District, and, therefore, resides in this District and/or (ii) committed the wrongful conduct against

23  certain members of the CLASS in San Diego County, California.

24

25                                             **PARTIES**

26          8.      Plaintiff Donna Louie was employed by Defendant Kaiser Foundation Health Plan,

27  Inc. as a Business Application Coordinator and a Site Support Specialist, successively, from on or

28  about June of 2007 to on or about February of 2008.

9.  Plaintiff Valerie Stringer was employed by Defendant Kaiser Foundation Health Plan, Inc. as a Product Specialist, a Business Application Coordinator and a Site Support Specialist, successively, from on or about December of 2004 to in or about 2007.

10.  Plaintiff Mark Steele was employed by Defendant Kaiser Foundation Health Plan as a Product Specialist and as a Business Application Coordinator from on or about August of 2005 to on or about March 6, 2007.

11.  Plaintiff Dan Royse was employed by Defendant Kaiser Foundation Health Plan as a Product Specialist and as a Business Application Coordinator, successively, from on or about April of 2005 to on or about January of 2007.

12.  Plaintiff Julie Teague was employed by Defendant Kaiser Foundation Health Plan as a Product Specialist and as a Business Application Coordinator, successively, from on or about August 2005 to on or about April of 2006.

13.  Plaintiff Jerahmeel Capistrano was employed by Defendant Kaiser Foundation Health Plan as a Product Specialist and as a Business Application Coordinator, successively,  from on or about August of 2005 to on or about July of 2007.

14.  Defendant Kaiser Foundation Health Plan is a California Corporation with its principal place of business in the State of California.  Defendant Kaiser Foundation Health Plan also conducts business in eight (8) other states in the United States and in the District of Columbia and is engaged in commerce within the meaning of the Fair Labor Standards Act by regularly and recurrently receiving or transmitting interstate communications between these states and the District of Columbia.

15.  The Defendants, Kaiser Foundation Health Plan, named in this Complaint, and Does 1 through 10, inclusive, are, and at all times mentioned herein were, the agents, servants, and/or employees of each of the other Defendant and each Defendant was acting within the course of scope of his, her or its authority as the agent, servant and/or employee of each of the other Defendant (the "DEFENDANTS").  Consequently, all the DEFENDANTS are jointly and severally liable to the PLAINTIFFS and the other members of the CLASS, for the losses sustained as a proximate result of DEFENDANTS' conduct.

**COLLECTIVE ACTION UNDER THE FLSA**

16.     PLAINTIFFS brings this lawsuit as a collective action under the Fair Labor and Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), on behalf of all persons who were, are, or will be employed by Defendant Kaiser Foundation Health Plan as a Product Specialist, Business Application Coordinator, and/or a Site Support Specialist Staff Member in California, and other similarly situated positions, at any time within the applicable statute of limitations period (the "COLLECTIVE CLASS PERIOD"), who have been misclassified as exempt from overtime and have not been fully compensated for all actual time worked and wages earned and other benefits, (the "COLLECTIVE CLASS").  To the extent equitable tolling operates to toll claims by the COLLECTIVE CLASS against DEFENDANT, the COLLECTIVE CLASS PERIOD should be adjusted accordingly.  The COLLECTIVE CLASS includes all such persons, whether or not they were paid by commission, by salary, or by part commission and part salary.

17.     Questions of law and fact common to the COLLECTIVE CLASS as a whole, but not limited to the following, include:

a.     Whether DEFENDANT misclassified PLAINTIFFS and members of the COLLECTIVE CLASS as exempt from the overtime requirements imposed by the FLSA, 29 U.S.C. § 207;

b.     Whether DEFENDANTS failed to adequately compensate the members of the COLLECTIVE CLASS for overtime hours worked as required by the FLSA, 29 U.S.C. § 207;

c.     Whether DEFENDANTS failed to adequately compensate the members of the COLLECTIVE CLASS for time all worked for the benefit of DEFENDANTS as required by the FLSA, including the time worked through their meal periods;

d.     Whether DEFENDANTS have systematically misclassified the members of the COLLECTIVE CLASS as exempt from receiving overtime compensation under section 13 of the FLSA and the applicable provisions of the Code of Federal Regulations;

e.     Whether DEFENDANTS should be enjoined from continuing the unlawful practices;

5

1  and,

2  f.  Whether DEFENDANTS are liable to the COLLECTIVE CLASS.

3  18.  The first cause of action for the violations of the FLSA may be brought

4  and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C.

5  216(b), for all claims asserted by the representative PLAINTIFFS of the COLLECTIVE CLASS

6  because the claims of the PLAINTIFFS are similar to the claims of the members of the prospective

7  COLLECTIVE CLASS.

8  19.  PLAINTIFFS are similarly situated and have substantially similar job

9  requirements and pay provisions to the CLASS, and were subject to Kaiser Foundation Health

10  Plan's common and uniform policy and practice misclassifying their Product Specialist, Business

11  Application Coordinator, and Site Support Specialist Staff Members, of failing to pay for all actual

12  time worked and wages earned, and failing to fully pay for all overtime in violation of the FLSA and

13  the Regulations implementing the Act as enacted by the Secretary of Labor (the

14  "REGULATIONS").

15

16  **CLASS ACTION ALLEGATIONS**

17  20.  PLAINTIFFS bring this action on behalf of themselves in their

18  individual capacities and also on behalf of a California Class of all employees of DEFENDANTS

19  who worked for Kaiser Foundation Health Plan in California who held a position as a Product

20  Specialist, Business Application Coordinator, and/or Site Support Specialist Staff Member, or other

21  similarly situated position, and who were misclassified as exempt from overtime during the period

22  commencing on October 4, 2003 and ending on the class period cutoff date (the "CALIFORNIA

23  CLASS PERIOD").  This class is hereinafter referred to as the "CALIFORNIA CLASS."  The

24  CALIFORNIA CLASS includes all such persons, whether or not they were paid by commission, by

25  salary, or by part commission and part salary.

26  21.  DEFENDANTS, as a matter of corporate policy, practice and procedure,

27  and in violation of the applicable California Labor Code ("Labor Code") and Industrial Welfare

28  Commission ("IWC") Wage Order Requirements intentionally and knowingly, on the basis of job

6

1  title alone and without regard to the actual overall requirements of the job, systematically

2  misclassified the PLAINTIFFS and the other members of the CALIFORNIA CLASS as exempt

3  from overtime wages and other labor laws in order to avoid the payment of overtime wages by

4  misclassifying their positions as exempt from overtime wages and other labor laws.  To the extent

5  equitable tolling operates to toll claims by the CALIFORNIA CLASS against DEFENDANTS, the

6  CALIFORNIA CLASS PERIOD should be adjusted accordingly.

7      22.    DEFENDANTS violated the rights of the CALIFORNIA CLASS under

8  California Law by:

9      (a)    Committing an act of unfair competition in violation of the California Labor

10             Code, by failing to pay PLAINTIFFS and the members of the CALIFORNIA

11             CLASS overtime pay for a work day longer than eight (8) hours, a work week

12             longer than forty (40) hours and/or for all hours worked on the seventh (7th)

13             consecutive day of a workweek, and by violating the California Labor Code

14             and regulations promulgated thereunder as hereinafter alleged.

15     (b)    Violating Cal. Lab. Code § 510 by failing to pay PLAINTIFFS and the

16             members of the CALIFORNIA CLASS overtime pay for a work day longer

17             than eight (8) hours, a work week longer than forty (40) hours and/or for all

18             hours worked on the seventh (7th) consecutive day of a workweek, for which

19             DEFENDANTS are liable pursuant to Cal. Lab. Code § 1194.

20     (c)    Violating Cal. Lab. Code § 515.5 by misclassifying PLAINTIFFS and the

21             members of the CALIFORNIA CLASS as exempt from receiving overtime

22             compensation.

23     (d)    Violating Cal. Lab. Code § 203, which provides that when an employee is

24             discharged or quits from employment, the employer must pay the employee

25             all wages due without abatement, by failing to tender full payment and/or

26             restitution of wages owed or in the manner required by California law to the

27             PLAINTIFFS and the members of the CALIFORNIA CLASS who have

28             terminated their employment.  Thus, DEFENDANTS are liable for such

7

1       wages for a period of thirty (30) days following the termination of such

2       employment.

3       (e)     Violating Cal. Lab. Code § 226, by failing to provide PLAINTIFFS and the

4               members of the CALIFORNIA CLASS with an accurate itemized statement

5               in writing showing the  total hours worked by the employee.

6       (f)     Violating Cal. Lab. Code §§ 1198 and 226.7 and the regulations and orders

7               implementing the Code, by failing to provide PLAINTIFFS and the members

8               of the CALIFORNIA CLASS with rest and/or meal periods and are thus

9               liable for premium pay of one hour for each workday such rest and/or meal

10              periods were denied.

11      23.     This Class Action meets the statutory prerequisites for the maintenance

12  of a Class Action as set forth in Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), in

13  that:

14      (a)     The persons who comprise the CALIFORNIA CLASS are so numerous that

15              the joinder of all such persons is impracticable and the disposition of their

16              claims as a class will benefit the parties and the Court;

17      (b)     Nearly all factual, legal, statutory, declaratory and injunctive relief issues that

18              are raised in this Complaint are common to the CALIFORNIA CLASS and

19              will apply uniformly to every member of the CALIFORNIA  CLASS;

20      (c)     The claims of the representative PLAINTIFFS are typical of the claims of

21              each member of the CALIFORNIA CLASS.  PLAINTIFFS, like all other

22              members of the CALIFORNIA CLASS, were systematically misclassified as

23              exempt and sustained economic injuries arising from DEFENDANTS'

24              violations of the laws of California.  PLAINTIFFS and the members of the

25              CALIFORNIA CLASS were and are similarly or identically harmed by the

26              same unlawful, deceptive, unfair and pervasive pattern of misconduct

27              engaged in by the DEFENDANTS of systematically misclassifying as exempt

28              all Product Specialist, Business Application Coordinator, and Site Support

8

1   Specialist Staff Members, and similarly situated employees solely on the

2   basis of their job title and without regard to DEFENDANTS' realistic

3   expectations and the actual, overall requirements of the job resulting in

4   economic injury to employees so misclassified.

5   (d)   The representative PLAINTIFFS will fairly and adequately represent and

6   protect the interest of the CALIFORNIA CLASS, and have retained counsel

7   who are competent and experienced in Class Action litigation.  There are no

8   material conflicts between the claims of the representative PLAINTIFFS and

9   the members of the CALIFORNIA CLASS that would make class

10  certification inappropriate.  Counsel for the CALIFORNIA CLASS will

11  vigorously assert the claims of all Class Members.

12  24.   In addition to meeting the statutory prerequisites to a Class Action, this action is

13  properly maintained as a Class Action pursuant to F.R.C.P. 23, in that:

14  (a)   Without class certification and determination of declaratory, injunctive,

15  statutory and other legal questions within the class format, prosecution of

16  separate actions by individual members of the CALIFORNIA CLASS will

17  create the risk of:

18  1)   Inconsistent or varying adjudications with respect to individual

19  members of the CALIFORNIA CLASS which would establish

20  incompatible standards of conduct for the parties opposing the

21  CALIFORNIA CLASS; or,

22  2)   Adjudication with respect to individual members of the

23  CALIFORNIA CLASS which would as a practical matter be

24  dispositive of interests of the other members not party to the

25  adjudication or substantially impair or impede their ability to protect

26  their interests.

27  (b)   The parties opposing the CALIFORNIA CLASS have acted on grounds

28  generally applicable to the CALIFORNIA CLASS, making appropriate class-

9

1    wide relief with respect to the CALIFORNIA CLASS as a whole in that the

2    DEFENDANTS systematically misclassified as exempt all Product Specialist,

3    Business Application Coordinator, and Site Support Specialist Staff Members

4    and similarly situated employees solely on the basis of their job title and

5    without regard to DEFENDANTS' realistic expectations and actual overall

6    requirements of the job;

7    (c)    Common questions of law and fact exist as to the members of the

8    CALIFORNIA CLASS and predominate over any question affecting only

9    individual members, and a Class Action is superior to other available

10    methods for the fair and efficient adjudication of the controversy, including

11    consideration of:

12    1)    The interests of the members of the CALIFORNIA CLASS in

13    individually controlling the prosecution or defense of separate actions;

14    2)    The extent and nature of any litigation concerning the controversy

15    already commenced by or against members of the CALIFORNIA

16    CLASS;

17    3)    The desirability or undesirability of concentrating the litigation of the

18    claims in the particular forum;

19    4)    The difficulties likely to be encountered in the management of a Class

20    Action; and,

21    5)    The basis of DEFENDANTS misclassifying PLAINTIFFS and the

22    CALIFORNIA CLASS as exempt by job title.

23    25.    This Court should permit this action to be maintained as a Class Action

24    pursuant to F.R.C.P. 23 because:

25    (a)    The questions of law and fact common to the CALIFORNIA CLASS

26    predominate over any question affecting only individual members;

27    (b)    A Class Action is superior to any other available method for the fair and

28    efficient adjudication of the claims of the members of the CALIFORNIA

10

FIRST AMENDED COMPLAINT

CLASS;

(c)     The members of the CALIFORNIA CLASS are so numerous that it is impractical to bring all members of the CALIFORNIA CLASS before the Court;

(d)     PLAINTIFFS, and the other CALIFORNIA CLASS members, will not be able to obtain effective and economic legal redress unless the action is maintained as a Class Action;

(e)     There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which DEFENDANTS' actions have inflicted upon the CALIFORNIA CLASS;

(f)     There is a community of interest in ensuring that the combined assets and available insurance of DEFENDANTS are sufficient to adequately compensate the members of the CALIFORNIA CLASS for the injuries sustained;

(g)     DEFENDANTS have acted or refused to act on grounds generally applicable to the CALIFORNIA CLASS, thereby making final class-wide relief appropriate with respect to the CALIFORNIA CLASS as a whole; and

(h)     The members of the CALIFORNIA CLASS are readily ascertainable from the business records of the DEFENDANTS.  The CALIFORNIA CLASS consists of all of DEFENDANTS' employees employed as Product Specialist, Business Application Coordinator, and Site Support Specialist Staff Members, and other similarly situated persons in California whose job classifications by DEFENDANTS as exempt were made solely on the basis of their job title and without regard to DEFENDANTS' realistic expectations and actual overall requirements of the job.  DEFENDANTS, as a matter of law, has the burden of proving the basis for the exemption as to each and every Product Specialist, Business Application Coordinator, and Site Support

FIRST AMENDED COMPLAINT

1    Specialist Staff Member.  To the extent that DEFENDANTS have failed to

2    maintain records sufficient to establish the basis for the exemption (including

3    but not limited to, the employee's job duties, wages, and hours worked) for

4    any Product Specialist, Business Application Coordinator, and/or Site

5    Support Specialist, DEFENDANTS are estopped, as a matter of law,  to

6    assert  the existence of the exemption.

8    **GENERAL ALLEGATIONS**

9    26.    Kaiser Foundation Health Plan, as a matter of corporate policy, practice and

10   procedure, and in violation of the applicable California Labor Code ("Labor Code"), Industrial

11   Welfare Commission ("IWC") Wage Order Requirements, and the applicable provisions of the

12   FLSA, intentionally, knowingly, and wilfully, on the basis of job title alone and without regard to

13   the actual overall requirements of the job, systematically misclassified the PLAINTIFFS and the

14   other members of the CALIFORNIA CLASS and the COLLECTIVE CLASS (the "CLASS") as

15   exempt from overtime wages and other labor laws in order to avoid the payment of overtime wages

16   by misclassifying their Product Specialist, Business Application Coordinator, and Site Support

17   Specialist Staff Members, and other similarly situated employees as exempt from overtime wages

18   and other labor laws.  To the extent equitable tolling operates to toll claims by the CLASS against

19   DEFENDANTS, the CALIFORNIA CLASS PERIOD and the COLLECTIVE CLASS PERIOD (the

20   "CLASS PERIODS")  should be adjusted accordingly.

21   27.    DEFENDANTS have intentionally and deliberately created numerous job levels and

22   a multitude of job titles to create the superficial appearance of hundreds of unique jobs, when in

23   fact, these jobs are substantially similar and can be easily grouped together for the purpose of

24   determining whether they are exempt from overtime wages.  For example, although PLAINTIFFS

25   were initially hired as "Product Specialists,"  Kaiser Foundation Health Plan later changed these job

26   titles to "Business Application Coordinators" approximately two (2) months after hiring.  Despite

27   the new titles, the PLAINTIFFS continued to perform only the same job functions as "Business

28   Application Coordinators" that they performed as "Product Specialists." Indeed, one of

12

1    DEFENDANTS' purposes in creating and maintaining this multi-level job classification scheme is

2    to create a roadblock to discovery and class certification for all employees similarly misclassified as

3    exempt.   DEFENDANTS have uniformly misclassified these CLASS members as exempt and

4    denied them overtime wages and other benefits to which non-exempt employees are entitled in order

5    to unfairly cheat the competition and unlawfully profit.

6        28.    DEFENDANTS maintain records from which the Court can ascertain and identify

7    by job title each of DEFENDANTS' employees who as CLASS members, have been systematically,

8    intentionally and uniformly misclassified as exempt as a matter of DEFENDANTS' corporate

9    policy, practices and procedures.  PLAINTIFFS will seek leave to amend the complaint to include

10   these additional job titles when they have been identified.

11

12                              **THE CONDUCT**

13       29.    Kaiser Foundation Health Plan, Inc. is a California Corporation which operates in

14   nine states and in the District of Columbia.   Kaiser Foundation Health Plan, Inc. is one of the

15   largest not-for-profit managed health care companies in the United States, offering hospital and

16   physician care through a network of hospitals and physician practices operating under the Kaiser

17   Permanente name.

18       30.    PLAINTIFFS were hired by Defendant Kaiser Foundation Health Plan, Inc. as

19   an exempt, temporary employees and placed into staff positions with the job titles of Product

20   Specialist, Business Application Coordinator, and/or Site Support Specialist.  The job titles were

21   described to the PLAINTIFFS as exempt and full time positions.  The PLAINTIFFS functioned as

22   working members on the production side of DEFENDANTS' Information Technology ("IT") Staff.

23   The primary job duties of PLAINTIFFS and the Product Specialist, Business Application

24   Coordinator, and Site Support Specialist team members was to provide technical support, install and

25   upgrade hardware and software, configure desktop computers, and test and troubleshoot equipment.

26       31.    The job duties performed by PLAINTIFFS as Products Specialists and/or Business

27   Application Coordinators were to provide technical support to hospital staff in connection with the

28   Kaiser Permanente HealthConnect computer system ("HealthConnect"), which was installed as part

1  of a procedure called "GoLive." This project was instituted in order to ensure that all Kaiser

2  Permanente facilities use a common software system. Intermittently, DEFENDANTS would deploy

3  PLAINTIFFS and other similarly situated employees in teams to Kaiser Permanente facilities in

4  Northern California for month-long durations, where they, along with their team, provided training,

5  technical support and assistance to hospital clinicians and staff in conjunction with the installation

6  of the HealthConnect computer system during the "GoLive" procedure (the "DEPLOYMENT").

7  Kaiser Permanente also employs this same GoLive procedure in various San Diego County

8  facilities. The work schedule during the DEPLOYMENTS lasted approximately four weeks where

9  the PLAINTIFFS worked more than eight (8) hours a day and more than forty (40) hours each week.

10  As a result of this rigorous work schedule, PLAINTIFFS and other similarly situated employees

11  were often unable to take meal or rest breaks. Furthermore, PLAINTIFFS and the other team

12  members were also required to deliver training sessions during their lunch periods called "Lunch &

13  Learns." The "Lunch & Learns" were deliberately scheduled during the meal periods so that the

14  hospital clinicians and staff members could eat their lunch and learn about the HealthConnect

15  system from the PLAINTIFFS, who were forced to deliver these training sessions during *their* meal

16  periods. Prior to the GoLive, DEFENDANTS would also require PLAINTIFFS and their team

17  members to participate in "Technical Dress Rehearsals." During these sessions, PLAINTIFFS and

18  their team members were required to test the software to ensure that the HealthConnect system was

19  functioning properly. Any problems or defects would have to be reported back to the

20  DEFENDANTS' employees who had the technical expertise to diagnose and cure the defects. In

21  order to test the equipment without disturbing the hospital staff, these Rehearsals took place either

22  during meal periods, early in the morning, or late in the evening when the staff was not working in

23  the department. This scheduling caused the workday, wherein PLAINTIFFS participated in the

24  "Technical Dress Rehearsals," to exceed eight (8) hours. Overall, the first two weeks of the

25  DEPLOYMENT were consistently the most grueling. The five (5) to six (6) day workweek

26  consisted of workdays which lasted as long as thirteen (13) hours. Both the third and fourth weeks

27  of the DEPLOYMENT  contained five (5) to six (6) workdays, during which PLAINTIFFS and their

28  fellow team members worked approximately ten (10) hours each day. Physical demands of this

1  position include and/or included standing, sitting, walking, and bending as needed to demonstrate

2  how to use the HealthConnect computer systems to hospital staff.  During the Class Period,

3  PLAINTIFFS and the members of their team worked and/or still work on the production side during

4  the various DEPLOYMENTS, but are nevertheless classified by DEFENDANT as exempt from

5  overtime pay and worked more than eight (8) hours a day and more than forty (40) hours a week.

6  The job duties and responsibilities described above that relate to providing technical support

7  comprised at least seventy percent (70 %) of the PLAINTIFFS' overall job duties and

8  responsibilities.

9       32.    The PLAINTIFFS employed as Site Support Specialist Staff

10  Members were required to remain on-call pursuant to the DEFENDANTS' "on-call" rotation plan

11  (the "ROTATIONS").  According to the ROTATIONS, each staff member employed as a Site

12  Support Specialists, including Plaintiffs Louie and Stringer, took turns performing on-call duties.

13  The performance of each ROTATION lasted for an entire seven (7) day workweek, and was

14  required to be undertaken by each Site Support Specialist staff member at least once every two (2)

15  months.  During this time, after returning home from at least an eight (8) hour work day, the Site

16  Support Specialist staff members were required to remain on stand-by for the entire night, every

17  night of the week, for the entire week without additional compensation.  After working an entire

18  workday on the Friday of the ROTATION, the Site Support Specialist staff members were required

19  to remain on call twenty-four (24) hours a day from Friday evening until Monday morning, when

20  they would report to the employer's work site for their "regular" workday.  The effect of

21  DEFENDANTS' on-call rotational system is that, during the team members rotation, the employee

22  is subject to receiving a call and is effectively precluded from engaging in any activity outside of

23  work that would hinder his ability to immediately respond to the technical support call.  This system

24  places severe limitations on the activities of the Site Support Specialist staff members were and the

25  members of this team and accordingly, their time is predominantly spent for the benefit of the

26  DEFENDANTS.  Each night of every ROTATION, the Site Support Specialist staff members'

27  movements were severely geographically restricted by DEFENDANTS' requirement that they

28  respond to any work request receive via pager within thirty (30) minutes by phone to the person

1  requesting technical support and then begin working on the technical support request at that time.

2  Although most of the work requests could be attended to by using their laptops, DEFENDANTS

3  required the Site Support Specialist staff members to remain within thirty (30) minutes of the

4  DEFENDANTS' premises in case on-site technical support was needed.  Each night, while on-call,

5  Plaintiffs Louie and Stringer and the Site Support Specialist staff members of the CLASS all were

6  subjected to calls in conjunction with the unduly restrictive fixed, response time-limit that

7  necessitated an answer to each call.   As a result of the burden imposed by these duties, Plaintiffs

8  Louie and Stringer and the Site Support Specialist staff members of the CLASS could not easily

9  trade their on-call responsibilities with another employee, as no one wanted this burden.  Further,

10  Plaintiffs Louie and Stringer and the Site Support Specialist staff members of the CLASS were

11  extremely restricted while on-call in the kind and extent of personal activities in which they could

12  engage.  Any personal activities which required longer than thirty (30) minutes to perform without

13  interruption, and/or required more than thirty  (30) minutes to travel to and from, including, but not

14  limited to, going to see a movie in a theater, dining at a restaurant, engaging in organized sporting

15  activities, participating in weddings, supplementing one's  income with a second job, and/or

16  attending to medical issues with the assistance of a doctor, dentist, or other professional, had to be

17  avoided entirely while on-call.  Another inconvenience imposed upon PLAINTIFF Plaintiffs Louie

18  and Stringer and the Site Support Specialist staff members of the CLASS was the inability to

19  provide oneself with an entire night of uninterrupted sleep, as the technical support calls often came

20  in past eleven o'clock at night (11:00 p.m.) From the DEFENDANTS' facility.  Despite these

21  demanding conditions imposed by DEFENDANTS, regular and overtime compensation for (a) the

22  hours worked during the ROTATIONS and (b) the "on-call" hours which restricted PLAINTIFF

23  Plaintiffs Louie and Stringer and the Site Support Specialist staff members of the CLASS during the

24  ROTATIONS as to be effectively engaged to wait, were withheld by DEFENDANTS from

25  Plaintiffs Louie and Stringer  and the Site Support Specialist staff members of the CLASS.

26       33.     In addition to the ROTATIONS, the Product Specialist, Business Application

27  Coordinator, and Site Support Specialists also worked "evening," "night," and "special shifts."

28  Even though these shifts were worked in addition to the regular working day of the members of the

FIRST AMENDED COMPLAINT

1  CLASS, these Product Specialist, Business Application Coordinator, and Site Support Specialist

2  Staff Members did not receive any additional compensation for this work performed between 10:00

3  p.m. and 6:00 a.m. and also on weekends and holidays.

4       34.    Neither PLAINTIFFS, nor any member of the CLASS, were primarily engaged

5  in work of a type that was or now is directly related to management policies or general business

6  operations, when giving these words a fair but narrow construction. Neither PLAINTIFFS, nor any

7  member of the CLASS were primarily engaged in work of a type that was or now is performed at

8  the level of the policy or management of the DEFENDANTS. To the contrary, the work of a

9  Product Specialist, Business Application Coordinator, and/or Site Support Specialist Staff Member

10 was work wherein PLAINTIFFS and the members of the CLASS were primarily engaged in the day

11 to day business operations of the DEFENDANTS, to support the computers that perform the day to

12 day work in accordance with the management policies and general business operations established

13 by DEFENDANTS' management.

14      35.    Considerations such as (a) DEFENDANTS' realistic expectations for Defendants'

15 staff members holding the job titled Product Specialist, Business Application Coordinator, Site

16 Support Specialist, and other similarly situated jobs, on the production side of the DEFENDANTS'

17 business enterprise, and (b) the actual overall requirements for Defendants' staff members holding

18 the job titled Product Specialist, Business Application Coordinator, and Site Support Specialist, are

19 susceptible to common proof. The fact that their work and those of other similarly situated

20 employees involved a computer and/or a specialized skill set in a defined technical area does not

21 mean that the PLAINTIFFS and other members of the CLASS are exempt from overtime wages.

22 Indeed, the exercise of discretion and independent judgment must be more than the use of a highly

23 technical skill set described in a manual or other sources. The work that PLAINTIFFS and other

24 members of the CLASS were and are primarily engaged in performing day to day activities is the

25 work that is required to be performed as part of the day to day business of DEFENDANTS. As a

26 result, PLAINTIFFS and the other members of the CLASS were primarily engaged in work that falls

27 squarely on the production side of the administrative/production worker dichotomy.

28      36.    Such work does not involve formulating management policies or operating practices,

FIRST AMENDED COMPLAINT

1    committing the employer in matters that have significant financial impact, negotiating and binding

2    the company on significant matters, planning business objectives, or other indicators of exercising

3    discretion and independent judgment with respect to matters of significance discussed in 29 C.F.R.

4    § 541.202(b).

5        37.    The work of PLAINTIFFS and the other members of the CLASS did not require

6    independent judgment or discretion.  On the contrary, the PLAINTIFFS and the other members of

7    the CLASS performed their work pursuant to regimented and standardized protocol.  Their work

8    was subject at all times to intense scrutiny and oversight by the management personnel who oversaw

9    the work of the Product Specialist, Business Application Coordinator, and Site Support Specialist

10   Staff Members.

11       38.    The ability to provide the kind of technical support provided by

12   PLAINTIFFS and the other members of the CLASS did not necessitate a college level degree or any

13   formalized higher education training.  Rather, the technical support is accomplished by the Product

14   Specialist, Business Application Coordinator, and Site Support Specialist by reference to written

15   manuals, assistance from other Product Specialist, Business Application Coordinator, and  Site

16   Support Specialist Staff Members, and/or pursuant to other pre-established guidelines and

17   procedures.

18       39.    DEFENDANTS systematically misclassified as exempt PLAINTIFFS and

19   all other members of the CALIFORNIA CLASS and COLLECTIVE CLASS solely on the basis of

20   their job title and without regard to DEFENDANTS' realistic expectations and actual overall

21   requirements of the job.  Consequently, PLAINTIFFS and the other members of the CALIFORNIA

22   CLASS and COLLECTIVE CLASS uniformly and systematically exempted from payment for

23   overtime wages for hours worked in excess of eight (8) hours per day, (40) forty hours per week,

24   and/or hours worked on the seventh (7th) consecutive day of a workweek during the CLASS

25   PERIOD.

26       40.    Cal. Lab. Code § 515 appoints the Industrial Welfare Commission to

27   establish exemptions from the requirement that an overtime rate of compensation be paid pursuant

28   to Sections 510 and 511 for executive, administrative, and professional employees, provided that the

18

1   employee is primarily engaged in the duties that meet the test of the exemption, customarily and

2   regularly exercises discretion and independent judgment in performing those duties, and earns a

3   monthly salary equivalent to no less than two times the state minimum wage for full-time

4   employment.  California Labor Code Section 515.5 and Industrial Welfare Commission Wage Order

5   4-2001, set forth the requirements which must be satisfied in order for a computer employee to be

6   lawfully classified as exempt.  Although wrongfully classified by DEFENDANTS as exempt at the

7   time of hire and thereafter, PLAINTIFFS, and all other members of the similarly-situated

8   CALIFORNIA CLASS, are not exempt under Industrial Welfare Commission Wage Order 4-2001,

9   and Cal. Lab. Code § 515.5.

10      41.     Section 13 of the FLSA and 29 Code of Federal Regulations Part 541, et

11  seq., set forth the requirements which must be satisfied in order for an employee to be lawfully

12  classified as exempt from receiving overtime compensation.  Although wrongfully classified by

13  DEFENDANTS as exempt at the time of hire and thereafter, PLAINTIFFS, and all other members

14  of the similarly-situated COLLECTIVE CLASS, are not exempt under section 13 of the FLSA or

15  the provisions of 29 C.F.R. 541, et seq.

16      42.     29 C.F.R. § 785.22 provides: Where an employee is required to be on duty for 24

17  hours or more, the employer and the employee may agree to exclude bona fide meal periods and a

18  bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked,

19  provided adequate sleeping facilities are furnished by the employer and the employee can usually

20  enjoy an uninterrupted night's sleep. If the sleeping period is of more than 8 hours, only 8 hours will

21  be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of

22  sleeping time and lunch periods constitute hours worked.

23      43.     Accordingly, PLAINTIFFS and every member of the CLASS are entitled to be

24  compensated for all time worked in excess of eight (8) hours per day, (40) forty hours per week,

25  and/or hours worked on the seventh (7th) consecutive day of a workweek, including time worked

26  while on-call where these employees were engaged to wait.

27      44.     In addition, under Cal. Lab. Code §§ 226.7 and 512, PLAINTIFFS and

28  other members of the CALIFORNIA CLASS, were required to be provided with rest period breaks

19

FIRST AMENDED COMPLAINT

each workday.  DEFENDANTS failed to provide PLAINTIFFS and all other members of the CALIFORNIA CLASS with the statutorily required rest period breaks during the CALIFORNIA CLASS PERIOD, which has caused additional economic injuries to PLAINTIFFS and other members of the CALIFORNIA CLASS.

45.     Further, under Cal. Lab. Code §§ 226.7 and 512, PLAINTIFFS and other members of the CALIFORNIA CLASS, were required to be provided with meal breaks each workday.  DEFENDANTS failed to provide PLAINTIFFS and all other members of the CALIFORNIA CLASS with the statutorily required uninterrupted meal breaks during the CALIFORNIA CLASS PERIOD, thereby causing additional economic injuries to PLAINTIFFS and other members of the CALIFORNIA CLASS.

46.     Under  29 U.S.C. § 207, PLAINTIFFS and other members of the COLLECTIVE CLASS, were required to be compensated for all meal breaks taken by PLAINTIFFS and the other members of the COLLECTIVE CLASS where they performed duties predominantly for the benefit of the DEFENDANTS during the meal breaks.   Under 29 CFR 785.19, this time spent during the lunch break is compensable because PLAINTIFFS and the other members of the COLLECTIVE CLASS were required to perform duties while eating.

**FIRST CAUSE OF ACTION**

**Fair Labor Standards Act, *29 U.S.C. §§ 201, et seq.* ("FLSA")**

**(By PLAINTIFFS and the COLLECTIVE CLASS and Against all DEFENDANTS)**

47.     PLAINTIFFS, and the other members of the COLLECTIVE CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 46 of this Complaint.

48.     DEFENDANTS are engaged in communication, business, and transmission between California, nine other states in the United States, and the District of Columbia, and is, therefore, engaged in commerce within the meaning of 29 U.S.C. § 203(b).

49.     29 U.S.C. § 255 provides that a three-year statute of limitations applies to willful violations of the FLSA.

FIRST AMENDED COMPLAINT

50.     29 U.S.C. § 207(a)(1) provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

51.     Section 213(a)(1) of the FLSA provides that the overtime pay requirement does not apply to:

any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act [5 USCS §§ 551 et seq.] except [that] an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities).

52.     DEFENDANTS have willfully engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed above, by uniformly designating certain employees as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic expectations and actual overall requirements of the job, including PLAINTIFFS and the other members of the COLLECTIVE CLASS who worked on the production side of the DEFENDANTS' business enterprise, including the teams of Product Specialist, Business Application Coordinator, and Site Support Specialist Staff Members.  This was done in an illegal attempt to avoid payment of

21

1  overtime wages and other benefits in violation of the FLSA and Code of Federal Regulations

2  requirements.

3      53.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* PLAINTIFFS and

4  the members of the COLLECTIVE CLASS are entitled to compensation for all hours actually

5  worked, including time spent training DEFENDANTS' employees during meal periods, and are also

6  entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours

7  worked in excess of forty (40) hours in any workweek.

8      54.    29 C.F.R. 541.2 establishes that a job title alone is insufficient to establish the

9  exempt status of an employee. The exempt or nonexempt status of any particular employee must be

10  determined on the basis of whether the employee's salary and duties meet the requirements of the

11  regulations in this part.

12     55.    The exemptions of the FLSA as listed in section 13(a), and as explained

13  by 29 C.F.R. 541.3, do not apply to PLAINTIFFS and the other members of the COLLECTIVE

14  CLASS, because their work consists of non-management, production line labor performed with

15  skills and knowledge acquired from on-the-job training, rather than from the prolonged course of

16  specialized intellectual instruction required for exempt learned professional employees such as

17  medical doctors, architects and archeologists.  PLAINTIFFS do not hold a computer related

18  bachelor's degree, have not taken any prolonged course of specialization relating to network

19  systems or infrastructure, and have attained the vast majority of the skills used as an employee of

20  DEFENDANTS from on the job training.

21     56.    For an employee to be exempt as a bona fide "executive," all the following criteria

22  must be met and DEFENDANTS have the burden of proving that:

23     (a)    The employee's primary duty must be management of the enterprise, or of a

24            customarily recognized department or subdivision;

25     (b)    The employee must customarily and regularly direct the work of at least two (2) or

26            more other employees;

27     (c)    The employee must have the authority to hire and fire, or to command particularly

28            serious attention to his or his recommendations on such actions affecting other

1    employees; and,

2    (d)    The employee must be primarily engaged in duties which meet the test of exemption.

3    No member of the COLLECTIVE CLASS was or is an executive because they all fail to meet the

4    requirements of being an "executive" under section 13 of the FLSA and 29 C.F.R. 541.100.

5    Moreover, none of the members of the COLLECTIVE CLASS were senior or lead computer

6    programmers who managed the work of two or more other programmers in a customarily

7    recognized department or subdivision of the employer, and whose recommendations as to the hiring,

8    firing, advancement, promotion or other change of status of the other programmers were given

9    particular weight and therefore, they do not qualify for the executive exemption as a computer

10    employees under 29 C.F.R. 541.402.

11    57.    For an employee to be exempt as a bona fide "administrator," all of the

12    following criteria must be met and DEFENDANTS have the burden of proving that:

13    (a)    The employee must perform office or non-manual work directly related to

14    management or general business operation of the employer or the employer's

15    customers;

16    (b)    The employee must customarily and regularly exercise discretion and independent

17    judgment with respect to matters of significance; and,

18    (c)    The employee must regularly and directly assist a proprietor or an exempt

19    administrator; or,

20    (d)    The employee must perform under only general supervision, work requiring special

21    training, experience, or knowledge; and,

22    (e)    The employee must be primarily engaged in duties which meet the test of exemption.

23    No member of the COLLECTIVE CLASS was or is an administrator because they all fail to meet

24    the requirements of for being  an "administrator" under section 13(a) of the FLSA and 29 C.F.R.

25    541.300.  Moreover, their primary duty does not include work such as planning, scheduling, and

26    coordinating activities required to develop systems to solve complex business, scientific or

27    engineering problems of the employer or the employer's customers and therefore, they are not

28    qualified for the administrative exemption as computer employees under 29 C.F.R. 541.402.

FIRST AMENDED COMPLAINT

58.    For an employee to be "exempt" as a bona fide "professional", the DEFENDANTS have the burden of proving that the primary duty of the employee is the performance of work that:

    (a)    Requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

    (b)    Requires invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

No member of the COLLECTIVE CLASS was or is a professional because they all fail to meet the requirements of being an "professional" within the meaning of 29 CFR 541.300.

59.    For an employee to be "exempt" as a computer software employee, DEFENDANTS have the burden of showing that the primary duty of the employee consists of:

    (a)    The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;

    (b)    The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

    (c)    The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or

    (d)    A combination of the aforementioned duties, the performance of which requires the same level of skills.

The "primary duty" of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, as defined in 29 C.F.R. 541.700, did not consist of the job functions outlined above.  Rather, the primary duty of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, consisted of providing technical support to DEFENDANTS' clinicians and staff in connection with the KP HealthConnect computer software.  Although the primary duty was highly dependent on and facilitated by the use of computers and computer software programs, the primary duty did not involve:

    (1)    the determination of hardware, software, or system functional specifications;

FIRST AMENDED COMPLAINT

(2)    the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs; or

(3)    a combination of these duties, the performance of which requiring the same level of skills.

Rather than write any software programming code, PLAINTIFFS and the other members of the CLASS simply provided end-user support for the use of the KP HealthConnect system which included, but was not limited to responding to and monitoring service requests, diagnosing, troubleshooting and resolving of technical problems and information technology issues related to desktop hardware, application or system software, and/or network infrastructure, in accordance with established policies and procedures.  Further, PLAINTIFFS and the members of the COLLECTIVE CLASS operated under a substantial amount of scrutiny from management in providing the technical support and in performing the other non-exempt functions that constituted their primary duties.  Thus, no member of the COLLECTIVE CLASS was or is exempt as a computer systems analyst, computer programmer, or software engineer because they all fail to meet the requirements of being a "professional" within the meaning of 29 U.S.C. § 213 and 29 C.F.R. 541.400.

60.    During the COLLECTIVE CLASS PERIOD, the PLAINTIFFS, and other members of the COLLECTIVE CLASS, worked more than forty (40) hours in a work week and were also required to perform duties that were primarily for the benefit of the employer during meal periods.

61.    At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and other members of the COLLECTIVE CLASS, overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by section 207 of the FLSA, even though PLAINTIFFS, and the other members of the COLLECTIVE CLASS, were regularly required to work, and did in fact work, overtime hours.

62.    At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and other members of the COLLECTIVE CLASS, regular compensation for the hours they have worked, performing duties primarily for the benefit of the employer during meal periods.

63.    For purposes of the Fair Labor Standards Act, the employment practices

1   of DEFENDANTS were and are uniform throughout California in all respects material to the claims

2   asserted in this Complaint.

3      64.     There are no other exemptions applicable to PLAINTIFFS and/or to

4   members of the COLLECTIVE CLASS.

5      65.     As a result of DEFENDANTS' failure to pay overtime and failure to pay

6   regular compensation for hours worked during meal periods, as required by the FLSA, PLAINTIFFS

7   and the members of the COLLECTIVE CLASS were damaged in an amount to be proved at trial.

8      66.     Therefore, PLAINTIFFS demand that they and the members of the

9   COLLECTIVE CLASS be paid overtime compensation as required by the FLSA for every hour of

10   overtime worked in any work week for which they were not compensated, regular compensation for

11   every hour worked primarily for the benefit of DEFENDANTS for which they were not

12   compensated, plus interest and attorneys' fees as provided by law.

13

14                           **SECOND CAUSE OF ACTION**

15                 **For Failure To Pay Overtime Compensation**

16          **[Cal. Lab. Code §§ 510, 515.5, 551, 552, 1194 and 1198]**

17      **(By PLAINTIFFS and the CALIFORNIA CLASS and Against all DEFENDANTS)**

18

19      67.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

20   reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 65

   of this Complaint.

21      68.     Cal. Lab. Code § 510 states in relevant part:

22

23           Eight hours of labor constitutes a day's work. Any work in excess of eight hours in

24           one workday and any work in excess of 40 hours in any one workweek and the first

25           eight hours worked on the seventh day of work in any one workweek shall be

26           compensated at the rate of no less than one and one-half times the regular rate of pay

27           for an employee.  Any work in excess of 12 hours in one day shall be compensated at

28           the rate of no less than twice the regular rate of pay for an employee. In addition, any

1    work in excess of eight hours on any seventh day of a workweek shall be
2    compensated at the rate of no less than twice the regular rate of pay of an employee.

3    69.    Cal. Lab. Code § 551 states that, "Every person employed in any occupation of labor
4    is entitled to one day's rest therefrom in seven."

5    70.    Cal. Lab. Code § 552 states that, "No employer of labor shall cause his employees to
6    work more than six days in seven."

7    71.    Cal. Lab. Code § 515(d) provides: "For the purpose of computing the overtime rate
8    of compensation required to be paid to a nonexempt full-time salaried employee, the
9    employee's regular hourly rate shall be 1/40th of the employee's weekly salary.

10    72.    Cal. Lab. Code § 1194 states:

11    Notwithstanding any agreement to work for a lesser wage, any employee receiving
12    less than the legal minimum wage or the legal overtime compensation applicable to
13    the employee is entitled to recover in a civil action the unpaid balance of the full
14    amount of this minimum wage or overtime compensation, including interest thereon,
15    reasonable attorney's fees, and costs of suit.

16    73.    Cal. Lab. Code § 1198 provides: "The maximum hours of work and the standard
17    conditions of labor fixed by the commission shall be the maximum hours of work
18    and the standard conditions of labor for employees. The employment of any
19    employee for longer hours than those fixed by the order or under conditions of labor
20    prohibited by the order is unlawful."

21    74.    DEFENDANTS have intentionally and uniformly designated certain
22    employees as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic
23    expectations and actual overall requirements of the job, including PLAINTIFFS and the other
24    members of the CALIFORNIA CLASS who worked on the production side of the DEFENDANTS'
25    business enterprise.  This was done in an illegal attempt to avoid payment of overtime wages and
26    other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission requirements.

27    75.    For an employee to be exempt as a bona fide "executive," all the
28    following criteria must be met and DEFENDANTS have the burden of proving that:

27

FIRST AMENDED COMPLAINT

(a)     The employee's primary duty must be management of the enterprise, or of a customarily recognized department or subdivision; and,

(b)     The employee must customarily and regularly direct the work of at least two (2) or more other employees; and,

(c)     The employee must have the authority to hire and fire, or to command particularly serious attention to his or his recommendations on such actions affecting other employees; and,

(d)     The employee must customarily and regularly exercise discretion and independent judgment; and,

(e)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the CALIFORNIA CLASS was or is an executive because they all fail to meet the requirements of being an "executive" within the meaning of Order No. 4-2001.

76.     For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)     The employee must perform office or non-manual work directly related to management policies or general business operation of the employer; and,

(b)     The employee must customarily and regularly exercise discretion and independent judgment; and,

(c)     The employee must regularly and directly assist a proprietor or an exempt administrator; or,

(d)     The employee must perform, under only general supervision, work requiring special training, experience, or knowledge, or,

(e)     The employee must execute special assignments and tasks under only general supervision; and,

(f)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the CALIFORNIA CLASS was or is an administrator because they all fail to meet the requirements for being an "administrator" under Order No. 4-2001.

77.     The Industrial Welfare Commission, ICW Wage Order 4-2001, at

28

1    section (1)(A)(3)(h), at Labor Code § 515, and Cal. Lab. § 515.5 also set forth the requirements

2    which must be complied with to place an employee in the "professional" exempt category.  For an

3    employee to be "exempt" as a bona fide "professional", all the following criteria must be met and

4    DEFENDANTS have the burden of proving that:

5      (a) The employee is primarily engaged in an occupation commonly recognized as a

6        learned or artistic profession.  For the purposes of this subsection, "learned or artistic

7        profession" means an employee who is primarily engaged in the performance of:

8        1) Work requiring knowledge of an advanced type in a field or science or

9          learning customarily acquired by a prolonged course of specialized

10         intellectual instruction and study, as distinguished from a general academic

11         education and from an apprenticeship, and from training in the performance

12         of routine mental, manual, or physical processes, or work that is an essential

13         part or necessarily incident to any of the above work; or,

14       2) Work that is original and creative in character in a recognized field of artistic

15         endeavor, and the result of which depends primarily on the invention,

16         imagination or talent of the employee or work that is an essential part of or

17         incident to any of the above work; and,

18       3) Whose work is predominately intellectual and varied in character (as opposed

19         to routine mental, manual, mechanical, or physical work) and is of such

20         character cannot be standardized in relation to a given period of time.

21     (b) The employee must customarily and regularly exercise discretion and independent

22       judgment; and.

23     (c) The employee earns a monthly salary equivalent to no less than two (2) times the

24       state minimum wage for full-time employment.  No member of the CALIFORNIA

25       CLASS was or is a professional because they all fail to meet the requirements of

26       being a "professional" within the meaning of Order No. 4-2001.

27   In particular, for an employee to be "exempt" as a bona fide "professional" with respect to the

28   requirements for a computer software employee, all the following criteria must be met and

DEFENDANTS have the burden of proving that:

    (a)    The employee must primarily perform work which is intellectual or creative and that requires the exercise of discretion and independent judgment; and,

    (b)    The employee is primarily engaged in duties which consist of one or more of the following:

        1)    the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

        2)    the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

        3)    the documentation, testing, creation or modification of computer programs related to the design of the software or hardware for computer operating systems; and,

    (c)    The employee must be highly skilled and proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming and software engineering. A job title shall not be determinative of the applicability of this exemption; and,

    (d)    The employee's hourly rate of pay is not less than forty-one dollars ($ 41.00), or the annualized full-time salary equivalent of that rate, provided that all other requirements of this section are met and that in each workweek the employee receives not less than forty-one dollars ($ 41.00) per hour worked. This is the rate which is adjusted by the DLSE on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.

        1)    The adjusted rates for each year of the CALIFORNIA CLASS PERIOD are as follows: In 2003, the rate was $43.58. In 2004, the rate was $44.63. In 2005, the rate was $45.84. In 2006, the rate was $47.81. Currently, in 2007, the

30

1    rate is $49.77.  No member of the CALIFORNIA CLASS was or is an

2    exempt  "Computer Software Employee" because they all fail to meet the

3    requirements of Order No. 4-2001.

4  PLAINTIFFS and all members of  the CALIFORNIA CLASS were paid less than these amounts

5  during the Class Period.

6       78.    PLAINTIFFS, and other members of the CALIFORNIA CLASS, do not

7  fit the definition of an exempt executive, administrative, or professional employee because:

8       (a)    They did not work as executives or administrators; and,

9       (b)    The professional exemption articulated in Wage Order 4-2001, section (1)(A)(3)(h)

10             and Labor Code § 515, and the professional exemption articulated in Cal. Lab. Code

11             § 515.5, does not apply to PLAINTIFFS, nor to the other members of the

12             CALIFORNIA CLASS, because they are either computer software employees paid

13             less than the requisite amount set forth in Cal. Lab. § 515.5(a)(4) and under

14             subdivision (1)(A)(3)(h)(iv) of Order No. 4-2001, and/or did not otherwise meet all

15             the applicable requirements to work under the exemption of computer software

16             employee for the reasons set forth above in this Complaint.

17  Rather than write any software programming code, PLAINTIFFS and the other members of the

18  CLASS simply provided end-user support for the use of the KP HealthConnect system which

19  included, but was not limited to responding to and monitoring service requests, diagnosing,

20  troubleshooting and resolving of technical problems and information technology issues related to

21  desktop hardware, application or system software, network infrastructure, in accordance with

22  established policies and procedures.  Further, PLAINTIFFS and the other members of the

23  CALIFORNIA CLASS operated under a substantial amount of scrutiny from management in

24  providing the technical support and in performing the other non-exempt functions that constituted

25  their primary duties.  As a result, the primary job duties performed by the PLAINTIFFS and the

26  other Product Specialist, Business Application Coordinator, and Site Support Specialist Staff

27  Members would not qualify these employees for either the executive, administrative, or computer

28  professional exemption.

FIRST AMENDED COMPLAINT

79.     During the class period, the PLAINTIFFS, and other members of the CALIFORNIA CLASS, worked more than eight (8) hours per day, (40) forty hours per week, and/or hours worked on the seventh (7th) consecutive day of a workweek.

80.     At all relevant times, DEFENDANTS failed to pay PLAINTIFFS, and other members of the CALIFORNIA CLASS, overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by Cal. Lab. Code §§ 510 and 1198, even though PLAINTIFFS, and the other members of the CALIFORNIA CLASS, were regularly required to work, and did in fact work, overtime hours.

81.     By virtue of DEFENDANTS' unlawful failure to pay additional compensation to the PLAINTIFFS, and the other members of the CALIFORNIA CLASS, for their regular and overtime hours, the PLAINTIFFS, and the other members of the CALIFORNIA CLASS, have suffered, and will continue to suffer, an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

82.     DEFENDANTS knew or should have known that PLAINTIFFS, and the other members of the CALIFORNIA CLASS, were misclassified  as exempt and DEFENDANTS systematically elected, either through intentional malfeasance or gross nonfeasance, not to pay them for their overtime labor as a matter of uniform corporate policy, practice and procedure.

83.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS, therefore, request recovery of regular and overtime compensation according to proof, interest, attorney's fees and cost pursuant to Cal. Lab. Code § 218.5 and § 1194(a), as well as the assessment of any statutory penalties against DEFENDANTS, in a sum as provided by the Cal. Lab. Code and/or other statutes.  Further, PLAINTIFFS, and the other members of the CALIFORNIA  CLASS, are entitled to seek and recover reasonable attorneys' fees and costs pursuant to Cal. Lab. Code §§ 218.5 and 1194.

84.     In performing the acts and practices herein alleged in violation of labor laws and refusing to provide the requisite regular and overtime compensation, the DEFENDANTS acted and continue to act intentionally, oppressively, and maliciously toward the PLAINTIFFS, and toward the other members of the CALIFORNIA CLASS, with a conscious and utter disregard of

1    their legal rights, or the consequences to them, and with the despicable intent of depriving them of

2    their property and legal rights and otherwise causing them injury in order to increase corporate

3    profits at the expense of PLAINTIFFS and the members of the Class.

4

5                                    **THIRD CAUSE OF ACTION**

6                                  **For Failure to Pay Wages When Due**

7                                        **[ Cal. Lab. Code § 203]**

8          **(By PLAINTIFFS and the CALIFORNIA CLASS and Against All DEFENDANTS)**

9          85.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

10   reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 83 of

11   this Complaint.

12         86.    Cal. Lab. Code § 200 provides that:

13                As used in this article:

14                (a) "Wages" includes all amounts for labor performed by employees of every

15                description, whether the amount is fixed or ascertained by the standard of time, task,

16                piece, commission basis, or other method of calculation.

17                (b) "Labor" includes labor, work, or service whether rendered or performed under

18                contract, subcontract, partnership, station plan, or other agreement if the labor to be

19                paid for is performed personally by the person demanding payment.

20         87.    Cal. Lab. Code § 202 provides, in relevant part, that:

21                If an employee not having a written contract for a definite period quits his or her

22                employment, his or her wages shall become due and payable not later than 72 hours

23                thereafter, unless the employee has given 72 hours previous notice of his or her

24                intention to quit, in which case the employee is entitled to his or her wages at the

25                time of quitting. Notwithstanding any other provision of law, an employee who quits

26                without providing a 72-hour notice shall be entitled to receive payment by mail if he

27                or she so requests and designates a mailing address. The date of the mailing shall

28                constitute the date of payment for purposes of the requirement to provide payment

                                                    33

1    within 72 hours of the notice of quitting.

2    88.    Cal. Lab. Code § 203 provides:

3    If an employer willfully fails to pay, without abatement or reduction, in accordance

4    with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is

5    discharged or who quits, the wages of the employee shall continue as a penalty from

6    the due date thereof at the same rate until paid or until an action therefor is

7    commenced; but the wages shall not continue for more than 30 days.

8    89.    Many of the California Class members have terminated their employment and

9    DEFENDANTS have not tendered restitution of wages owed.

10    90.    Therefore, as provided by Cal lab. Code § 203, on behalf of themselves and

11    the members of the CALIFORNIA CLASS, PLAINTIFFS demand thirty days of pay as penalty for

12    not paying all wages due at time of termination for all employees who terminated employment

13    during the CALIFORNIA CLASS PERIOD and demand an accounting and payment of all wages

14    due, plus interest, as provided by Cal lab. Code § 218.6 plus attorneys fees and interest as allowed

15    by law.

16

17    **FOURTH CAUSE OF ACTION**

18    **For Failure to Provide Meal and Rest Periods**

19    **[Cal. Lab. Code §§ 226.7 and 512]**

20    **(By PLAINTIFFS and the CALIFORNIA CLASS and against All DEFENDANTS)**

21    91.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

22    reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 90 of

23    this Complaint.

24    92.    Cal. Lab. Code § 512 provide, in relevant part: "An employer may not employ an

25    employee for a work period of more than five hours per day without providing the

26    employee with a meal period of not less than 30 minutes, except that if the total work

27    period per day of the employee is no more than six hours, the meal period may be

28    waived by mutual consent of both the employer and employee. An employer may not

34

employ an employee for a work period of more than 10 hours per day without
providing the employee with a second meal period of not less than 30 minutes,
except that if the total hours worked is no more than 12 hours, the second meal
period may be waived by mutual consent of the employer and the employee only if
the first meal period was not waived.

93.    Section 11 of the Order 4-2001 of the Industrial Wage Commission provides, in relevant part:

Meal Periods:

(A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(B)    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

94.    Section 12 of the Order 4-2001 of the Industrial Wage Commission provides, in relevant part:

Rest Periods:

(A)    Every employer shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The

35

authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3-1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B)    If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

95.    Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

96.    DEFENDANTS have intentionally and improperly failed to provide all rest and/or meal periods without any work or duties to PLAINTIFFS and the other members of the CALIFORNIA CLASS who worked more than three and one half hours (3 ½) per day, and by failing to do so DEFENDANTS violated the provisions of Labor Code 226.7.

97.    Therefore, PLAINTIFFS demand on behalf of themselves and the members of the CALIFORNIA CLASS, one (1) hour of pay for each workday in which a rest period was not provided for each four (4) hours of work during the period commencing on the date that is within four years prior to the filing of this Complaint and one (1) hour of pay for each five (5) hours of work in which a meal period was not provided.

**FIFTH CAUSE OF ACTION**

**For Failure to Provide Accurate Itemized Statements**

**[Cal. Lab. Code § 226]**

**(By PLAINTIFFS and the CALIFORNIA CLASS and against All DEFENDANTS)**

98.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 97 of this Complaint.

99.    Cal. Labor Code § 226 provides that an employer must furnish employees with an "accurate itemized statement in writing showing:

(1) gross wages earned,

(2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission,

(3) the number of piecerate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,

(4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,

(5) net wages earned,

(6) the inclusive dates of the period for which the employee is paid,

(7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement,

(8) the name and address of the legal entity that is the employer, and

(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

100.    At all times relevant herein, DEFENDANTS violated Labor Code § 226, in that DEFENDANTS failed to properly and accurately itemize the number of hours worked by

37

1  PLAINTIFFS, and the other members of the CALIFORNIA CLASS at the effective regular rates of

2  pay and the effective overtime rates of pay.

3       101.    DEFENDANTS knowingly and intentionally failed to comply with

4  Labor Code § 226, causing damages to PLAINTIFFS, and the other members of the CALIFORNIA

5  CLASS.  These damages include, but are not limited to, costs expended calculating the true hours

6  worked and the amount of employment taxes which were not properly paid to state and federal tax

7  authorities.  These damages are difficult to estimate.  PLAINTIFFS, and the other members of the

8  CLASS, therefore, elect to recover liquidated damages of $50.00 for the initial pay period in which

9  the violation occurred, and $100.00 for each violation in subsequent pay period pursuant to Labor

10 Code § 226, in an amount according to proof at the time of trial (but in no event more than

11 $4,000.00 for PLAINTIFFS and each respective member of the CALIFORNIA CLASS herein) plus

12 reasonable attorney's fees and costs pursuant to Labor Code § 226(g).

13

14              **SIXTH CAUSE OF ACTION**

15            **For Unlawful Business Practices**

16         **[Cal. Bus. And Prof. Code § 17200 et seq.]**

17  **(By PLAINTIFFS and the CALIFORNIA CLASS and against All DEFENDANTS)**

18       102.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and

19 incorporate by this reference, as though fully set forth herein, paragraphs 1 through 101 of this

20 Complaint.

21       103.    DEFENDANTS are "persons" as that term is defined under Cal. Bus. and Prof.

22 Code § 17021.

23       104.    Cal. Bus. And Prof. Code § 17200 defines unfair competition as any

24 unlawful, unfair, or fraudulent business act or practice.

25       105.    By the conduct alleged hereinabove in the Second through Fifth Claims

26 for Relief, DEFENDANTS have violated the provisions of the Unfair Competition Law, Cal. Bus.

27 & Prof. Code §§ 17200, et seq., for which this Court should issue equitable and injunctive relief,

28 pursuant to Cal. Bus. & Prof. Code § 17203, including restitution of wages wrongfully withheld or

1    labor taken without proper compensation.

2        106.    By and through the unfair and unlawful business practices described

3    hereinabove, DEFENDANTS have obtained valuable property, money, and services from the

4    PLAINTIFFS, and the other members of the CLASS, and has deprived them of valuable rights and

5    benefits guaranteed by law, all to their detriment and to the benefit of DEFENDANTS so as to allow

6    DEFENDANTS to unfairly compete.

7        107.    All the acts described herein as violations of, among other things, the

8    Cal. Lab. Code and Industrial Welfare Commission Wage Orders, are unlawful and in violation of

9    public policy; and in addition are immoral, unethical, oppressive, and unscrupulous, and Thereby

10   constitute unfair and unlawful business practices in violation of Cal. Bus. And Prof. Code § 17200

11   et seq.

12       108.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS, are

13   further entitled to, and do, seek a declaration that the above described business practices are unfair

14   and unlawful and that an injunctive relief should be issued restraining DEFENDANTS from

15   engaging in any of these unfair and unlawful business practices in the future.

16       109.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS, have

17   no plan, speedy, and/or adequate remedy at law that will end the unfair and unlawful business

18   practices of DEFENDANTS.  As a result of the unfair and unlawful business practices described

19   above, PLAINTIFFS, and the other members of the CALIFORNIA CLASS, have suffered and will

20   continue to suffer irreparable harm unless DEFENDANTS are restrained from continuing to engage

21   in these unfair and unlawful business practices.  In addition, DEFENDANTS should be required to

22   disgorge the unpaid moneys to PLAINTIFFS, and the other members of the CALIFORNIA CLASS.

23

24                    **SEVENTH CAUSE OF ACTION**

25               **Labor Code Private Attorneys General Act**

26                    **[Cal. Labor Code § 2698]**

27   **(By PLAINTIFFS and the CALIFORNIA CLASS and against All DEFENDANTS**)

28       110.    PLAINTIFFS, and the other members of the CLASS, reallege and incorporate by this

1  reference, as though fully set forth herein, paragraphs 1 through 109 of this Complaint.

2        111.    On May 7, 2008, PLAINTIFFS gave written notice by certified mail to the Labor

3  and Workforce Development Agency and the employer of the specific provisions of this code

4  alleged to have been violated as required by Labor Code § 2699.3.  More than thirty-three (33) days

5  have elapsed since PLAINTIFFS gave notice to the Labor and Workforce Development Agency

6  ("LWDA").  As a result, pursuant to Section 2699.3, Plaintiff may now commence a civil action

7  pursuant to Section 2699.

8        112.    The policies, acts and practices heretofore described were and are an unlawful

9  business act or practice because DEFENDANTS' failure to pay wages, failure to provide rest and

10  meal period breaks, failure to pay wages and compensation for work without rest and meal period

11  breaks and failure to provide accurate wage statements and maintain accurate time records for

12  PLAINTIFFS and the other members of the CLASS violates applicable Labor Code sections and

13  gives rise to statutory penalties as a result of such conduct, including but not limited to penalties as

14  provided by Labor Code §§ 221, 226, 226.7, 558, 1174 and 1194, applicable Industrial Welfare

15  Commission Wage Orders.  PLAINTIFFS , as aggrieved employees, hereby seek recovery of civil

16  penalties as prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of

17  themselves and other current and former employees of DEFENDANTS, against whom one or more

18  of the violations of the Labor Code was committed.

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

**PRAYER**

WHEREFOR, PLAINTIFFS pray for judgment against each Defendant, jointly and severally, as follows:

A)    Compensatory damages, according to proof at trial due PLAINTIFFS and the other members of the COLLECTIVE CLASS and CALIFORNIA CLASS, during the applicable COLLECTIVE CLASS PERIOD and CALIFORNIA CLASS PERIOD plus interest thereon at the statutory rate;

B)    Restitution, according to proof at trial, due PLAINTIFFS and the other members of the CALIFORNIA CLASS, during the applicable CALIFORNIA CLASS PERIOD plus interest thereon at the statutory rate;

C)    One (1) hour of pay for each workday in which a rest period was not provided to PLAINTIFFS and each member of the CALIFORNIA CLASS for each four (4) hours of work during the period commencing on the date that is within four years prior to the filing of this Complaint;

D)    One hour of pay for each five (5) hours of work in which a meal period was not provided to PLAINTIFFS and each member of the CALIFORNIA CLASS;

E)    An order temporarily, preliminarily and permanently enjoining and restraining DEFENDANTS from engaging in similar unlawful conduct as set forth herein;

F)    An order requiring DEFENDANTS to provide an accounting of all wages and all sums unlawfuly withheld from compensation due to PLAINTIFFS and the other members of the COLLECTIVE and CALIFORNIA CLASSES;

G)    Imposition of a constructive trust upon the assets of the DEFENDANTS to the extent of the sums due to PLAINTIFFS and to the other members of the COLLECTIVE and CALIFORNIA CLASSES;

H)    An award of interest, including prejudgment interest at the legal rate;

I)    An award of statutory damages, including reasonable attorneys' fees and cost of suit, but only to the extent that such reasonable attorneys' fees and costs are recoverable pursuant to Cal. Lab. Code §1194. Neither this prayer nor any other allegation or

1      prayer in this Complaint is to be construed as a request, under any circumstance, that

2      would result in a request for attorneys' fees or costs available under Cal. Lab. Code §

3      218.5;

4    J)    For all appropriate relief pursuant to Cal. Lab. Code § 2699.3, including any

5      applicable interest thereon; and,

6    K)    An award of penalties as available under the law; and,

7    L)    Such other and further relief as the Court deems just and proper.

8

Dated: June 17, 2008            BLUMENTHAL & NORDREHAUG

9

10                By:__s/Norman B. Blumenthal_____
                     Norman B. Blumenthal

11                      Attorneys for Plaintiffs

12            **UNITED EMPLOYEES LAW GROUP**
            Walter Haines (State Bar #71075)

13            65 Pine Ave, #312
           Long Beach, CA 90802

14            Telephone: (562) 256-1047
           Facsimile: (562) 256-1006

15

16            **SANFORD, WITTELS & HEISLER, LLP**
            David W. Sanford (D.C. Bar #457933)
            Stefanie Roemer (D.C. Bar #464450)

17             Shayna Bloom (D.C. Bar #498105)
           1666 Connecticut Avenue, NW, Suite 310

18            Washington, D.C. 20009
           Telephone: (202) 742-7777

19            Facsimile: (202) 742-7776

20            **LAW OFFICES OF GRANT E. MORRIS**
            Grant Morris (D.C. Bar #926253)

21            1666 Connecticut Avenue, N.W., Suite 310
           Washington, D.C. 20009

22            Telephone: (202) 742-7777
           Facsimile: (202) 742-7776

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2

3

Plaintiffs demand a jury trial on issues triable to a jury.

4

Dated: June 17, 2008                               BLUMENTHAL & NORDREHAUG

5

6

By:___s/Norman B. Blumenthal_____
                                                        Norman B. Blumenthal
7                                                       Attorneys for Plaintiffs

8

**UNITED EMPLOYEES LAW GROUP**
    Walter Haines (State Bar #71075)
9   65 Pine Ave, #312
    Long Beach, CA 90802
10  Telephone: (562) 256-1047
    Facsimile: (562) 256-1006

11

**SANFORD, WITTELS & HEISLER, LLP**
12      David W. Sanford (D.C. Bar #457933)
        Stefanie Roemer (D.C. Bar #464450)
13      Shayna Bloom (D.C. Bar #498105)
    1666 Connecticut Avenue, NW, Suite 310
14  Washington, D.C.  20009
    Telephone: (202) 742-7777
15  Facsimile: (202) 742-7776

16

**LAW OFFICES OF GRANT E. MORRIS**
    Grant Morris (D.C. Bar #926253)
17  1666 Connecticut Avenue, N.W., Suite 310
    Washington, D.C.  20009
18  Telephone: (202) 742-7777
    Facsimile: (202) 742-7776
19

20  G:\D\NBB\Louie v. Kaiser\p-FAC.wpd

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT