**BLUMENTHAL & NORDREHAUG**
   Norman B. Blumenthal (State Bar #068687)
   Kyle R. Nordrehaug (State Bar #205975)
   Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**QUALLS & WORKMAN**
   Daniel H. Qualls (State Bar #109036)
   Robin G. Workman (State Bar #145810)
244 California Street, Suite 410
San Francisco, CA 94111
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

Additional Counsel listed on signature page

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA LOUIE, an individual, VALERIE STRINGER, an individual, MARK STEELE, an individual, and DAN ROYSE, an individual, JULIE TEAGUE, an individual, and JERAHMEEL CAPISTRANO, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation, and Does 1 to 10,<br><br>Defendants. | CASE No. 08 CV 0795 IEG RBB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>District Judge: Hon. Irma E. Gonzalez<br>Courtroom:    1, 4th Flr<br><br>Hearing Date:  September 29, 2008<br>Hearing Time: 10:30 a.m.<br><br>Action Filed:        May 1, 2008 |

Plaintiffs Valerie Stringer, Donna Louie, Mark Steele, Dan Royse, Julie Teague, and Jerahmeel Capistrano ("Plaintiffs") respectfully submit this memorandum of points and authorities in support of Plaintiffs' motion for preliminary approval of settlement of this class action.

# TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  DESCRIPTION OF THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.  THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY
     APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.  The Role Of The Court In Preliminary Approval
         Of A Class Action Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.  Factors To Be Considered In Granting Preliminarily Approval . . . . . . . . . . . . . . 10
         1.  The Settlements are the Product of Serious, Informed and
             Noncollusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.  The Settlement Has No "Obvious Deficiencies" and Falls Within
             the Range for Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         3.  The Settlement Does Not Improperly Grant Preferential Treatment To Class
             Representatives or Segments Of The Class . . . . . . . . . . . . . . . . . . . . . . . 17
         4.  The Stage Of The Proceedings Are Sufficiently Advanced To Permit
             Preliminary Approval Of These Settlements . . . . . . . . . . . . . . . . . . . . . . 17

VI.  THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES . . . . . . . . . 19

     A.  Rule 23 of the Federal Rules of Civil Procedure Governs . . . . . . . . . . . . . . . . . . 19

     B.  The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     C.  Common Questions of Law Bind the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     D.  The Claims of the Plaintiffs Are Typical of the Class Claims . . . . . . . . . . . . . . . 21

     E.  The Named Plaintiffs Have Fairly and Adequately Protected
         the Interest of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     F.  The Additional Requirements of Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . . . . . . . . . . . 25

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases:**

Ansari v. New York Univ.,
179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Armstrong v. Board of School Directors,
616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Buchholtz v. Swift & Co.,
62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Consolidated Rail Corp. v. Town of Hyde Park,
47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Donaldson v. Pillsbury Co.,
554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EEOC v. Kovacevich "5" Farms,
2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . 18

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Glass v. UBS Fin. Servs.,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . . . . . . . . . . . . . . . . 12-17

Hanlon v. Chrysler Co.,
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

Heffelfinger v. Elec. Data Sys. Corp.,
2008 U.S. Dist. LEXIS 46461 (C.D. Cal. June 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 14

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Jiffy Lube Sec. Litig.,
927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Wash. Public Power Supply System Sec. Litig.,
720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Wells Fargo Home Mortg. Overtime Pay Litig.,
2007 U.S. Dist. LEXIS 77525 (N.D. Cal. October 17, 2007) . . . . . . . . . . . . . . . . . . . . . 22

In re Wirebound Boxes Antitrust Lit.,
128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Workman's Comp.,
    130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

Jenkins v. Raymark Ind., Inc.,
    782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Jenson v. Continental Fin. Corp.,
    404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jordan v. County of Los Angeles,
    669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kirkorian v. Borelli,
    695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Krzesniak v. Cendant Corp.,
    2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) . . . . . . . . . . . . . . . . . . . . . . 22

Lockwood Motors, Inc. v. General Motors Corp.,
    162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

Lyons v. Marrud, Inc.,
    [1972-1973 Transfer Binder] Fed. Sec. L. Rep.
    (CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
    323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
    390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Reed v. General Motors Corp.,
    703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Slaven v. BP Am., Inc.,
    190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tate v. Weyerhaeuser Co.,
    723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tierno v. Rite Aid Corp.,
    2006 U.S. Dist. LEXIS 71794, (N.D. Cal. Aug. 31, 2006) . . . . . . . . . . . . . . . . . . . . . 22

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wang v. Chinese Daily News,
    231 F.R.D. 602 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Weinberger v. Kendrick,
        698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

White v. Local 942,
        688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes:**

29 U.S.C. § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Business and Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Labor Code §2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Labor Code §204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Labor Code §210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code §1198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Secondary Authorities:**

2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . . . . . . . 8, 21, 24, 25

Manual for Complex Litigation, Second §30.44 (1993) . . . . . . . . . . . . . . . . . . . . . . . 8, 10

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . . . . . 9

1  ## I.    INTRODUCTION

2          Plaintiffs and Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser") have reached a full

3  and final settlement of the above-captioned action, which is embodied in the Stipulation of

4  Settlement and Release Between Plaintiffs and Defendant ("Settlement Agreement") filed

5  concurrently with the Court. By this motion, Plaintiffs seek preliminary approval from the Court of

6  the Settlement Agreement [1] (a copy of which is attached as Exhibit A to the Declaration of Norman

7  Blumenthal, served and filed herewith), conditional certification of the Settlement Class, approval

8  of the Preliminary Approval Order for Final Approval of the Class Settlement.

9  ## II.    DESCRIPTION OF THE SETTLEMENT

10          Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement

11  that is fair, reasonable and favorable to the Class, which includes all persons employed by Kaiser as

12  (a) Product Specialists; (b) Business Application Coordinators; and (c) Site Support Specialists,

13  within the state of California during the period from October 4, 2003 through the date of preliminary

14  approval of this Settlement. The Parties submitted to mediation before Anthony A. Piazza, a

15  preeminent mediator of wage and hour class actions. Declaration of Norman Blumenthal, ("Decl.

16  Blumenthal") ¶5; Declaration of Daniel H. Qualls ("Decl. Qualls"). As a result of the all day

17  mediation, the parties reached a settlement that they believe to be fair and reasonable in light of the

18  experience of the Parties' attorneys as Counsel in other wage and hour cases, and the uncertainties

19  and cost of the years of litigation the Parties faced if the settlement was not reached. Decl.

20  Blumenthal, ¶5; Decl. Qualls, ¶9.

21          Under the terms to which the Parties have agreed, Kaiser will make a payment of Five

22  Million, Four Hundred Thousand Dollars ($ 5.4 million) in full discharge of all claims asserted in

23  this action on a claims-made basis ("Gross Fund Value"), without a reversion to Kaiser except for

24  payment of taxes. Decl. Blumenthal, ¶3. This sum is inclusive of all claims of the Settlement Class

25  members, as well as Class Counsel's attorneys' fees and costs, incentive awards for the Class

26

27      [1]    Capitalized terms in this Memorandum have the same meaning as contained in the

28  Stipulation and Settlement Agreement.

1  Representatives, PAGA payments, and the cost of class notice and claims administration.

2  Per paragraph 9 of the Settlement Agreement, Kaiser shall initially pay, in addition to the

3  Gross Fund Value, any appropriate and lawfully required employer payroll taxes owing on the

4  portion of the Gross Fund Value that is allocated to wages. To the extent that claims made do not

5  exhaust the Settlement Fund, the remainder shall first be used to reimburse Kaiser for payment of

6  Kaiser's share of payroll taxes, with the balance to be distributed pro-rata to Participating Class

7  Members who submit valid claims on a proportional basis. The Settlement Agreement provides for

8  a claims process requiring Kaiser to make payments on each timely and valid claim submitted.

9  This is a fair result for the members of the Settlement Class. Liability in this case was

10  uncertain because some or all of the Class Members may have been exempt from certain pay

11  requirements applicable to nonexempt employees. Indeed, some courts have found exemptions to

12  apply in cases involving similar facts. Decl. Blumenthal, ¶ 6. Moreover, there was further

13  uncertainty as to whether class certification could have been achieved and maintained throughout

14  the litigation.

15  **III.    NATURE OF THE CASE**

16  On October 4, 2007, Valerie Stringer filed a complaint in the Superior Court for the County

17  of Alameda, State of California as Case No. RG 07349734, entitled *Valerie Stringer v. Kaiser*

18  *Permanente, et. al.*, on behalf of a putative class of Product Specialists and Business Application

19  Coordinators ("BACs") who worked on the KP HealthConnect project in California. The central

20  allegation of the *Stringer* lawsuit was that the BACs had been misclassified as exempt. Decl.

21  Qualls, ¶ 2.

22  On November 13, 2007, Plaintiffs Mark Steele, Dan Royse, Julie Teague, and Jerahmeel

23  Capistrano filed a complaint in the U.S. District Court for the Northern District of California

24  entitled *Mark Steele, et al. v. Kaiser Foundation Health Plan, Inc.*, Case No. 3:07-cv-05743. The

25  *Steele* Plaintiffs also alleged wage and hour claims on behalf of a putative class of Product

26  Specialists and BACs who worked on the KP HealthConnect project in California, asserting

27  essentially the same exempt misclassification claims as those asserted in the *Stringer* lawsuit.

28

On May 1, 2008, Donna Louie, filed a complaint in the U.S. District Court for the Southern District of California entitled *Donna Louie v. Kaiser Foundation Health Plan, Inc.*, Case No. 08 CV 0795 IEG RBB. Louie alleged similar claims as those asserted in the *Stringer* and *Steele* lawsuits, but on behalf of a separate class of Site Support Specialists who were not alleged as claimants in the other litigation and who worked on the KP HealthConnect project in California. Louie also worked as a BAC for Kaiser.

All of the above referenced lawsuits dealt with Kaiser employees who all performed similar functions in connection with the KP HealthConnect project. The Parties recognized the similarities between the lawsuits and, as a result, agreed that these class actions are related and can be settled collectively. Decl. Blumenthal, ¶7; Settlement Agreement, ¶¶ 1-2.

Accordingly, for purposes of this settlement agreement, a "Class Member" is defined as follows:

> All persons who, at any time between October 4, 2003 and preliminary approval of the settlement, worked for Kaiser Foundation Health Plan, Inc. in California in connection with KP HealthConnect in the positions of Product Specialist, Business Application Coordinator ("BAC") or Site Support Specialist.

In order to coordinate all lawsuits for the purposes of the Settlement, the Parties agreed that the Steele and Stringer actions would be dismissed without prejudice and these plaintiffs added to this action. In accordance with this agreement, counsel for Donna Louie filed an amended Louie complaint to also allege all claims set forth in the Steele and Stringer lawsuits, along with adding thereto as Named Plaintiffs all Plaintiffs in the Steele and Stringer actions and file the same with all Class Counsel as counsel for Plaintiffs as the First Amended Complaint herein (the "Action").

Since the Settlement Agreement was reached, the *Steele* action was dismissed without prejudice and Louie filed an amended complaint to consolidate the claims of the Named Plaintiffs from all three actions. Per paragraph 8 of the Settlement Agreement, the *Stringer* action will be dismissed without prejudice upon the effective date of the Settlement. Decl. Blumenthal, ¶8.

The First Amended Complaint ("FAC") was also amended to add a claim under the Private Attorney Generals Act ("PAGA"), Cal. Labor Code §2698, et seq. The Action therefore currently

1    asserts claims for violations of the California Labor Code §§ 204, 210, 218, 226, 226.7, 510, 512,

2    1194 and 1198, the Fair Labor Standards Act, 29 U.S.C. § 216, and the California Business and

3    Professions Code §17200, along with claims for civil penalties under PAGA. The Named Plaintiffs

4    allege that individuals employed by Kaiser as Product Specialists, Business Application

5    Coordinators, and Site Support Specialists were not paid overtime wages for all hours worked more

6    than eight (8) in a day, forty (40) in a week, or on the seventh (7th) consecutive day of a workweek,

7    and were not provided with all meal and rest breaks as required for non-exempt employees. The

8    Action seeks various statutory penalties and restitution for unfair competition pursuant to California

9    Business and Professions Code Section 17200 including disgorgement of profits, recovery of pre

10   and post judgment interest, attorneys' fees, and costs. Decl. Blumenthal, ¶9.

11        Although a settlement has been reached, Kaiser denies any and all liability or wrongdoing of

12   any kind associated with the claims alleged in the FAC. Further, Kaiser denies that the claims

13   asserted are suitable for class treatment. Kaiser maintains, among other things, that they have

14   complied at all times with the California Labor Code, that the members of the putative class are

15   properly classified as exempt under California law and that all members of the putative class were

16   properly paid all wages owed to them. Specifically, in Kaiser's view, the Settlement Class

17   Members are properly classified as exempt because they spend the majority of their time engaged in

18   work directly related to the general business operations of Kaiser and were, therefore, covered under

19   the administrative exemption. Further, Kaiser contends that class certification would be

20   inappropriate because the Named Plaintiffs do not share common issues of fact or law with the

21   proposed class, they are not an adequate representative of the proposed class, their claims are not

22   typical of the proposed class, and class treatment would require the Court to conduct individualized

23   inquiries that would predominate over common questions of law or fact. Decl. Blumenthal, ¶11.

24        Plaintiffs contend that Kaiser violated California wage and hour laws and that the Action is

25   appropriate for class certification on the basis that the Named Plaintiffs' claims meet the requisites

26   for class certification. Without admitting that class certification is proper, Kaiser has stipulated that

27   a Class of Product Specialists, Business Application Coordinators ("BAC") and Site Support

28

1   Specialist in California may be certified for settlement purposes only.  The Parties agree that

2   certification for settlement purposes is not an admission that class certification would be proper if

3   the class certification issue were litigated.  Further, this agreement is not admissible in this or any

4   other proceeding as evidence that the Class could be certified absent a settlement.  Solely for

5   purposes of settling the lawsuits, the Parties stipulate and agree that the requisites for establishing

6   class certification with respect to the Class, as defined above, have been met and are met.  Decl.

7   Blumenthal ¶ 12.

8          Class Counsel has conducted a thorough investigation into the facts of the class action.

9   Class Counsel has diligently evaluated the Class Members' claims against Kaiser.  Prior to the

10   Parties executing a "Memorandum of Understanding," counsel for Kaiser provided Class Counsel

11   with access to Class Member data, including data reflecting the weeks worked by the Class

12   Members and relevant salary information for the positions at issue.  Based on the foregoing data and

13   their own independent investigation and evaluation, Class Counsel believes that the settlement with

14   Kaiser for the consideration and on the terms set forth in this Settlement Agreement is fair,

15   reasonable, and adequate and is in the best interest of the Class in light of all known facts and

16   circumstances, including the risk of significant delay, defenses asserted by Kaisers, and numerous

17   potential appellate issues.  Decl. Blumenthal at ¶ 13.  Kaiser and Kaiser's counsel also agree that the

18   Settlement is fair and in the best interest of the Class.

19   **IV.     PLAN OF ALLOCATION**

20          In consideration for settlement of this Action and a release of the claims described in

21   paragraph 8 of the Settlement Agreement, Kaiser agrees to pay a Gross Fund Value sum to the Class

22   Members not to exceed Five Million, Four Hundred Thousand Dollars ($5,400,000) ("GFV"), less

23   Class Counsel's attorneys' fees, costs and expenses, the Named Plaintiffs' incentive awards, PAGA

24   payments, and the costs of settlement administration.  Decl. Blumenthal, ¶ 14.  The remaining Net

25   Fund Value ("NFV") will be distributed as follows:

26          Each participating Settlement Class Member ("Participating Class Member") will be entitled

27   to a share of the NFV.  To the extent that Class Members opt out or members of the Settlement

28

1    Class fail to submit a valid Claim Forms so as to become a Participating Class Member their share

2    of the NFV shall not revert to Kaiser, but rather shall first be used to pay the employer's share of

3    payroll taxes with the balance then being redistributed to the Participating Class Members as part of

4    the Settlement Amount available for distribution. The distribution of this excess unclaimed portion

5    of the NFV over and above the amount required to cover the employer share of payroll taxes shall

6    be proportional to each class claimant's original provisional share of the NFV as per paragraph

7    12(d)(1) of the Settlement Agreement. Decl. Blumenthal, ¶16.

8         As per paragraph 12(d)(2) of the Settlement Agreement, the class shall be broken into a

9    BAC/Product Specialist Subclass and a Site Support Specialist Subclass. The portion of the NFV to

10   pay claims shall be divided so that 40.74% of the fund is allocated to the Site Support Specialist

11   subclass and 59.26% is allocated to the BAC/Product Specialist subclass. The Claims

12   Administrator shall initially determine each Class Members' share of the NFV. The initial

13   calculation shall determine the total number of work weeks of each Class Member for the Class

14   Period between October 4, 2003 and the date of preliminary approval and then dividing each Class

15   Members applicable work weeks by the total of all the applicable work weeks for that employees'

16   subclass to get a percentage of the NFV to be allocated to the Class Members as their share under

17   the initial calculation. Where employees worked in both subclasses, the administrator shall perform

18   a separate calculation for their share as derived from work in each subclass. For purposes of this

19   calculation, a "workweek" shall be defined as the total number of payroll hours the employee

20   worked during the class period in a Product Specialist, BAC, or Site Support Specialist position,

21   divided by 40. The final calculation of the total number of work weeks for the Class shall be

22   determined for the Class Period from October 4, 2003 and the date of preliminary approval. The

23   Claims Administrator shall advise counsel for both Parties as to the final calculation of total work

24   weeks. The final calculation shall first determine the correct GFV and the NFV are properly

25   calculated. Next the Participating Class Members shall be allocated their prorated share of the

26   available NFV using the formula set forth herein above. To the extent that this amount reallocates

27   any non-reversionary amount to these Participating Class Members that amount shall first be used to

28

---

MEMO OF P&A IN SUPPORT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
6                                              08 CV 0795 IEG RBB

1  pay employer's share of payroll taxes for the Participating Class Member.

2  As per paragraph 12(c)(2) of the Settlement Agreement, Kaiser and their counsel will not

3  oppose an attorneys' fees award to Class Counsel of 25% of the Settlement Amount, or $1,350,000

4  to be deducted from the GFV, to compensate Class Counsel for all of the work already performed in

5  this case and all of the work remaining to be performed in documenting the Settlement, securing

6  Court approval of the Settlement, making sure that the Settlement is fairly administered and

7  implemented and obtaining dismissal of the actions. Separate from this award for attorneys' fees,

8  Class Counsel shall be entitled to recoup up to $100,000 for their reasonable litigation costs. Decl.

9  Blumenthal, ¶ 17.

10  As per paragraph 12(c)(4) of the Settlement Agreement, Class Counsel will request that each

11  Class Representative receive an incentive award to be deducted from the GFV, of $25,000 per

12  Named Plaintiff for their service as a Class Representative, in addition to their individual claim for a

13  share to which they are otherwise entitled through the claims process. Kaiser will not oppose this

14  request. Decl. Blumenthal, ¶ 18.

15  As per paragraph 12(c)(3) of the Settlement Agreement, the reasonable costs of the Claims

16  Administrator associated with the administration of this Settlement not to exceed $50,000 will be

17  paid for from the GFV. The Claims Administrator will be CPT Group. Decl. Blumenthal, ¶19.

18  As per paragraph 12(c)(1) of the Settlement Agreement, the Parties have allocated a total of

19  Thirty-three Thousand Three Hundred Thirty Three Dollars and Thirty-three Cents ($33,333.33) to a

20  PAGA Settlement Fund. Kaiser agrees to establish a segregated PAGA Settlement Fund from the

21  GFV consisting of a maximum of $33,333.33. Labor Code section 2699(i) requires that any

22  settlement under this section is distributed as follows: 75% to the State's LWDA for enforcement

23  of labor laws and education of employers and 25 % to aggrieved employees. Therefore, $25,000

24  will be paid to the State. The remaining $8,333.33 will be distributed on a pro rata basis to

25  Qualified Claimants, as defined in paragraph 14(c) (the "PAGA Award"). Decl. Blumenthal, ¶20.

26  Within fifteen (15) business days of preliminary approval by the Court, Kaiser will deposit

27  money in an amount equal to the Gross Fund Value into an interest-bearing account, through the

28

1  Claims Administrator.  Decl. Blumenthal, ¶ 21.  Settlement Payments to Class Members will occur

2  within fifteen (15) business days of the Effective Date of final approval of the Settlement.

3  **V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL**

4

5      When a proposed class-wide settlement is reached, the settlement  must be submitted to the

6  court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class

7  Actions (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that

8  comprise the approval procedure for settlements of class actions.  The second step is the

9  dissemination of notice of the settlement to all class members.  The third step is a final settlement

10 approval hearing, at which evidence and argument concerning the fairness, adequacy, and

11 reasonableness of the settlement may be presented and class members may be heard regarding the

12 settlement.  See Manual for Complex Litigation, Second §30.44 (1993).

13      The question presented on a motion for preliminary approval of a proposed class action

14 settlement is whether the proposed settlement is "within the range of possible approval."  Manual

15 for Complex Litigation, Second §30.44 at 229; Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir.

16 1982).   Preliminary approval is merely the prerequisite to giving notice so that "the proposed

17 settlement . . . may be submitted to members of the prospective Class for their acceptance or

18 rejection."  Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323

19 F. Supp. 364, 372 (E.D. Pa. 1970).  There is an initial presumption of fairness when a proposed

20 settlement, which was negotiated at arm's length by counsel for the Class, is presented for court

21 approval.  Newberg, 3d Ed., §11.41, p.11-88.  However, the ultimate question of whether the

22 proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given

23 to the class members and a final settlement hearing is held by the Court.

24 **A.    The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

25      The approval of a proposed settlement of a class action suit is a matter within the broad

26 discretion of the trial court.  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).  Preliminary

27 approval does not require the trial court to answer the ultimate question of whether a proposed

28

1 │ settlement is "fair, reasonable and adequate." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th

2 │ Cir. 1991); Manual for Complex Litigation, Third, §§ 20.212. That determination is made only after

3 │ notice of the settlement has been given to the members of the class and after the class members have

4 │ been given an opportunity to voice their views of the settlement or to be excluded from the

5 │ settlement Class. See, e.g., 3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003).

6 │      In considering a potential settlement for preliminary approval purposes, the trial court does

7 │ not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of

8 │ the dispute (Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)), and need not engage in a

9 │ trial on the merits. Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982), cert.

10 │ denied, 459 U.S. 1217 (1983). The court is not required to determine that certification of a

11 │ settlement class is appropriate until the final settlement approval. In re General Motors Corp.

12 │ Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 797 (3d Cir. 1995).

13 │      The question of whether a proposed settlement is fair, reasonable and adequate necessarily

14 │ requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the

15 │ terms of the compromise with the likely rewards of litigation." Weinberger v. Kendrick, 698 F.2d

16 │ 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting Protective Comm. for Indep.

17 │ Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)). Therefore,

18 │ many courts recognize that the opinion of experienced counsel supporting the settlement is entitled

19 │ to considerable weight. Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988); Reed v.

20 │ General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983); Weinberger, 698 F.2d at 74; Armstrong v.

21 │ Board of School Directors, 616 F.2d 305, 325 (7th Cir. 1980); Fisher Bros. v. Cambridge-Lee

22 │ Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985). For example, in Lyons v. Marrud, Inc.,

23 │ [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court

24 │ noted that "[e]xperienced and competent counsel have assessed these problems and the probability

25 │ of success on the merits. They have concluded that compromise is well-advised and necessary. The

26 │ parties' decision regarding the respective merits of their position has an important bearing on this

27 │ case." Id. at ¶ 92,520.

28 │

**B.    Factors To Be Considered In Granting Preliminarily Approval**

A number of factors are to be considered in evaluating a settlement for purposes of preliminary approval. No one factor should be determinative, but rather all factors should be considered. These criteria have been summarized as follows:

If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. Manual of Complex Litigation, Second §30.44, at 229. Here, the settlement meets all of these criteria.

**1.    The Settlement is the Product of Serious, Informed and Noncollusive Negotiations**

This settlement is the result of extensive and hard fought negotiations. Kaiser denies each and every one of the claims and contentions alleged in this Action. Kaiser has asserted and continues to assert many defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. Nonetheless, Kaiser has concluded that this Action be settled in the manner and upon the terms and conditions set forth in the Stipulation of Settlement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals. Kaiser has decided to put to rest the Released Claims of the Settlement Class.

Settlement negotiations took place before Anthony Piazza, one of the preeminent mediators of wage and hour class actions. Counsel for the Parties, after settlement negotiations lasting the entire day, reached an agreement, based upon Mr. Piazza's expertise as a mediator and the uncertainties of protracted litigation. Decl. Blumenthal ¶ 5; Decl. Qualls, ¶¶9-10. Most importantly, Plaintiffs and Class Counsel believes that this settlement is fair, reasonable and adequate. By reason of the settlement, Kaiser has agreed to pay $5.4 million, as payment in full of all of the Class claims arising from the events described in the FAC including Class Counsel's attorneys' fees and expenses, PAGA payments, Class Representatives' incentive awards, and the

1    cost of class notice and claims administration.

2    Class Counsel has conducted a thorough investigation into the facts of the class action,

3    including an extensive review of relevant documents and data, and have diligently pursued an

4    investigation of the Settlement Class Members' claims against Kaiser. Decl. Qualls, ¶ 3-8, 10.

5    Based on the foregoing documents and data and their own independent investigation and evaluation,

6    Class Counsel is of the opinion that the settlement with Kaiser for the consideration and on the

7    terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best

8    interest of the class in light of all known facts and circumstances, including the risk of significant

9    delay, defenses asserted by Kaiser, and numerous potential appellate issues. Kaiser and Kaiser's

10   counsel also agree that the Settlement is fair and in the best interest of the Class Members.

11   Plaintiffs and Class Counsel recognizes the expense and length of continuing to litigate and

12   trying this Action against Kaiser through possible appeals which could take several years. Class

13   Counsel has also taken into account the uncertain outcome and risk of litigation, especially in

14   complex actions such as this Action. Class Counsel is also mindful of and recognize the inherent

15   problems of proof under, and alleged defenses to, the claims asserted in the Action. Based upon

16   their evaluation, Plaintiffs and Class Counsel has determined that the settlement set forth in the

17   Stipulation is in the best interest of the Class Members.

18   Here the negotiations have been hard-fought and aggressive with capable advocacy on both

19   sides. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were

20   vigorously conducted at arms' length and without any suggestion of undue influence." In re Wash.

21   Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

22          **2.    The Settlement Has No "Obvious Deficiencies" and Falls Within
                    the Range for Approval**

23

24   The proposed Settlement herein has no "obvious deficiencies" and is well within the range of

     possible approval. All Settlement Class Members will receive an opportunity to participate in and

25   receive payment.

26   The calculations to compensate for the amount due for the nonpayment of wages were

27   calculated by CADA, Plaintiffs' damage expert. Decl. Qualls, ¶6-8. For the Product Specialist and

28

---

MEMO OF P&A IN SUPPORT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

08 CV 0795 IEG RBB

Business Application Coordinators ("BACs"), the overtime hourly rate used was the rate of $35.33. The number of workweeks involved was 42,505 for the Class Period. Each one (1) hour per workweek of unpaid overtime for the BACs equals $1,501,489.13 for the Class Period. Each missed meal break per work week for the BACs equals $1,000,992.75 for the Class Period. Each missed rest break per work week for the BACs equals $1,000,992.75 for the Class Period. As a result, the Kaiser was subject to claims at a rate of $3,503,474.63 for the combination of one unpaid hour of overtime, one missed meal break, and one missed rest break per workweek for the BACs. Decl. Qualls, ¶ 6.

For the Site Support Specialists ("SSSs"), the overtime hourly rate used was the rate of $50.76. The number of workweeks involved was 9,283 for the Class Period. The Class Members employed as SSSs worked additional unpaid overtime as a result of their on-call responsibilities, which was not required of the BACs. Accordingly, CADA calculated that every four (4) hours per workweek of unpaid overtime for the SSSs equals $1,884,820.32. Each missed meal break per work week for the SSSs equals $314,136.72. Each missed rest break per workweek for the SSSs equals $314,136.72. As a result, the Kaiser was subject to claims at a rate of $2,513,093.76 for the SSSs. Decl. Qualls, ¶ 7.

Consequently, Kaiser was subject to total claims of $6,016,568.39 for the entire Class Period for the combination of unpaid overtime, missed meal breaks, and missed rest breaks for the entire Class that was susceptible to sold proof. The settlement of $5,400,000, before deductions, represents 89.75% of the subject claims and after deduction of the PAGA payment of $25,000, the attorneys' fees and costs payment of $1,450,000, the claims administration payment of $50,000, and the Class Representatives' incentive awards of $150,000, the NFV will equal $3,725,000, which is nearly 62% of a full recovery, assuming these amounts could be proven at trial. Clearly the goal of this litigation has been met. Decl. Blumenthal, ¶ 6; Decl. Qualls, ¶ 8.

In Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court for the Northern District of California recently approved a settlement of an action claiming unpaid overtime wages where the settlement amount constituted only

1  approximately 25 to 35% of the estimated actual loss to the class.  Here the settlement

2  consideration constitutes a substantially larger percentage of the estimated actual loss to the class.[2]

3          In Glass, the federal court ruled that the settlement which represented approximately 25 to

4  35% of the loss to the class was fair, reasonable, and adequate.  Id. at 28.  A fortiori, this settlement

5  is most certainly entitled to preliminary approval.

6          Where both sides face significant uncertainty, the attendant risks favor settlement.  Hanlon v.

7  Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by Kaiser

8  present serious threats to the claims of Plaintiffs and the other Class Members. For example Kasier

9  contended that many Class Members were barred from recovery by the "administrative exemption"

10 set forth in 29 C.F.R. Section 541.402, which provides:

11         Computer employees within the scope of [the computer professional exemption] may
           also have . . . administrative duties which qualify the employees for exemption under
12         [the administrative exemption]. For example, systems analysts and computer
           programmers generally meet the duties requirement for the administrative exemption if
13         their primary duty includes work such as planning, scheduling, and coordinating
           activities required to develop systems to solve complex business, scientific or
14         engineering problems of the employer or the employer's customers.

15 Kaiser also relied on 29 C.F.R. § 541.201(a)(b) which provides:

16         Work "directly related to management or general business operations" includes, but is
           not limited to, work in functional areas such as tax; finance; accounting; budgeting;
17         auditing; insurance; quality control; purchasing procurement; advertising; marketing;
           research; safety and health; personnel management; human resources; employee
18         benefits; labor relations; public relations; government relations; computer network,
           internet and database administration; legal and regulatory compliance; and similar
19         activities.

20         These new federal regulations specifically identify work as a project manager as an example

21 of that which qualifies for the administrative exemption. 29 C.F.R. Section 541.203 (c) states: "An

22 employee who leads a team of other employees assigned to complete major projects for the

23

_____

24    [2]    In Glass, the federal court granted preliminary approval of the settlement although the parties
       failed to submit evidence verifying their estimate of the total loss to the class.  At the final fairness
25    hearing, the parties presented a lengthy discussion of the above-referenced estimate, in which they
       represented that their estimate of the maximum loss to the class was based on hard data obtained
26    from interviews with class members, computer log-in records, and payroll records. Id. at *28-*29.
       The parties estimate of the total loss to the Settlement Class here is based on the same type of hard
27    data that was not submitted in Glass until final settlement approval was sought.

28

_____

1   employer . ... generally meets the duties requirements for the administrative exemption, even if the

2   employee does not have direct supervisory responsibility over the other employees on the team."

3            In <u>Bagwell v. Florida Broadband</u>, 2005 WL 1962562, (S.D. Fla. 2005), the district court

4   found that a network operation engineer was exempt under both the administrative and the computer

5   professional exemptions to the FLSA. The court found that the administrative exemption applied

6   where plaintiff's primary duty was developing, improving, and making Florida Broadband's

7   network system function reliably. Although the plaintiff performed some physical work, such as

8   installations, the court found that the plaintiff's primary duty was not manual because the

9   predominance of plaintiff's duties were problem-solving, office and administrative duties. <u>Id.</u> at

10  1323-24.

11           In <u>Koppinger v. American Interiors, Inc.</u>, 295 F. Supp. 2d 797 (N.D. Ohio 2003), the court

12  granted summary judgment for the employer, finding that the plaintiff who was responsible for

13  maintaining the company's computer system qualified for the administrative exemption.

14           [The plaintiff's] duties consisted of ordering replacement parts, recommending
             purchases of new software and hardware, installing software, and repairing equipment
15           for the company's computer users. When users called in with computer problems,
             plaintiff determined the priority of and when and how to handle those problems. No one
16           set his priorities; he worked largely, if not entirely, independently. ... While the plaintiff
             did a fair amount of work loading software and fixing computers and other equipment,
17           he also made recommendations about what software and hardware the company should
             purchase.
18
    <u>Id.</u> at 799;[3] Decl. Blumenthal, ¶26-27.
19
             There was also a significant risk that, if the Actions were not settled, Plaintiffs would be
20
    unable to obtain class certification and thereby not recover on behalf of any Kaiser employees other
21
    than themselves. In <u>Dunbar v. Albertson's, Inc.</u>, 141 Cal. App. 4th 1422, 1431-32 (2006), the
22

23   _____

24        [3]    See also <u>Heffelfinger v. Elec. Data Sys. Corp.</u>, 2008 U.S. Dist. LEXIS 46461 (C.D. Cal.
          June 6, 2008) (court held that classes of information technology workers were exempt under the
25        administrative exemption); <u>Hickman v. United States</u>, 10 Cl. Ct. 550, 561 (1986) (court held that an
          electronics technician and a computer equipment analyst were exempt under the administrative
26        exemption); <u>Shillinglaw v. System Works, Inc.</u>, 1993 WL 603289 (N.D. Ga. 1993) (holding that the
          plaintiff, who was employed as a computer programmer/analyst was an exempt administrative
27        employee); <u>Raper v. State of Iowa</u>, 688 N.W.2d 29, 43 (Iowa 2004).
28

    _____
    MEMO OF P&A IN SUPPORT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
                                        14                      08 CV 0795 IEG RBB

1  California Court of Appeal recently affirmed an order denying class certification to a class of

2  employees who claimed that they were denied overtime pay because whether the executive

3  exemption applied would have had to have been individually determined for each class member

4  which meant that common issues did not predominate.  Similarly, here Kaiser would have certainly

5  argued in opposing class certification that individual issues predominated because the applicability

6  of the administrative exemption would have to be separately determined for each Class Member

7  based on their individual experience.  While other cases have approved class certification in

8  overtime wage claims, class certification in this action would have been hotly disputed and was by

9  no means a foregone conclusion.

10  After vigorous negotiations, the mediator presented the parties with a mediator's proposal of

11  $5.4 million.  Recognizing the potential risks, both sides agreed.  As the federal court recently held

12  in Glass, where the parties faced uncertainties similar to those here:

13  In light of the above-referenced uncertainty in the law, the risk, expense, complexity,
   and likely duration of further litigation likewise favors the settlement. Regardless of how
14  this Court might have ruled on the merits of the legal issues, the losing party likely
   would have appealed, and the parties would have faced the expense and uncertainty of
15  litigating an appeal. "The expense and possible duration of the litigation should be
   considered in evaluating the reasonableness of [a] settlement." See In re Mego Financial
16  Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

17  Here, the risk of further litigation is substantial.

> **3.    The Settlement Does Not Improperly Grant Preferential Treatment To
>         The Class Representative or Segments Of The Class**

18

19

20  The relief provided in the settlement will benefit all Class Members equally.  The settlement

21  does not improperly grant preferential treatment to the Class Representative or any individual

22  segments of the Class.

23  Each Settlement Class member, including the Named Plaintiffs, will be entitled to payment

24  based on the plan of allocation.  Each Settlement Class member's lump sum payment will be

25  determined as follows:

26  The class shall be broken into a BAC/Product Specialist Subclass and a Site Support

27  Specialist Subclass.  The portion of the NFV to pay claims shall be divided so that 40.74% of the

28  fund is allocated to the Site Support Specialist subclass and 59.26% is allocated to the BAC/Product

Specialist subclass.  This distribution fairly balances the larger number of workweeks allocable towards the BAC/Product Specialist subclass with the greater amount of overtime worked by the members of the Site Support Specialist subclass.

In addition, the Class Representatives will each apply to the trial court for a Named Plaintiff Enhancement of $25,000.  In <u>Glass</u>, the district court recently awarded each of the class representatives in an overtime wages class action a service award of $25,000.  <u>Glass</u>, 2007 U.S. Dist. LEXIS 8476 at *51-52.

### 4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement.  Class Counsel has conducted a thorough investigation into the facts of the class action.  Class Counsel began investigating the Class Members' claims before this action was filed.  Class Counsel also obtained production of extensive business and payroll records produced through informal discovery.  Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of experts.  Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.

Based on the foregoing data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Kaiser for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Kaiser, and numerous potential appellate issues.  Kaiser and Kaisers' counsel also agree that the Settlement is fair and in the best interest of the Class Members.  There can be no doubt that Counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.  Decl. Blumenthal ¶ 25-26; Decl. Qualls, ¶ 2-8, 10.

In <u>Glass</u>, the Northern District of California recently granted final approval of an overtime

1  and meal wage action although in <u>Glass</u> no formal discovery had been conducted prior to the

2  settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See <u>In re Mego Financial Corp. Securities Litigation</u>, 213 F.3d at 459.

6  2007 U.S. Dist. LEXIS 8476 at *14.

7      Here, Class Counsel was in a significantly stronger position to evaluate the fairness of this

8  settlement than in Glass because they conducted informal discovery as well as independent

9  investigations and due diligence to confirm the accuracy of the information supplied by Kaiser.

10  **VI.    THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES**

11      The proposed settlements meet all of the requirements for class certification under F.R.C.P.

12  §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve the settlement

13  classes as defined in the Stipulation of Settlement.  This Court should conditionally certify a

14  settlement class for settlement purposes only that consists of "All persons who, at any time between

15  October 4, 2003 and preliminary approval of the settlement, worked for Kaiser Foundation Health

16  Plan, Inc. in California in connection with KP HealthConnect in the positions of Product Specialist,

17  Business Application Coordinator ("BAC") or Site Support Specialist." Settlement Agreement at ¶2.

18      **A.    Rule 23 of the Federal Rules of Civil Procedure Governs**

19      Plaintiffs seek certification of this Action for settlement purposes under F.R.C.P  §23(b)(3).

20  This portion of rule 23 applies to class actions where "the court finds that the questions of law or

21  fact common to the members of the class predominate over any questions affecting only individual

22  members, and that a class action is superior to other available methods for the fair and efficient

23  adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).

24      To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule 23(a)

25  must first be satisfied.  These prerequisites are referred to as numerosity, commonality, typicality,

26  and adequacy of representation, and are set forth in Rule 23(a) as follows:

27  (1)    the class is so numerous that joinder of all members is impracticable,

28

---

(2)    there are questions of law or fact common to the class,

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4)    the representative parties will fairly and adequately protect the interests of the class.

While Kaiser disputes that the Plaintiffs can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Settlement Class should be certified for purposes of settlement.

**B.    The Numerosity Requirement Is Satisfied**

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable." F.R.C.P. §23(a). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995). In Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), the Court held that "numerosity is presumed at a level of 40 members." The Ninth Circuit observed that classes with fewer than 70 members have been certified in numerous cases. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been certified in numerous cases).

Here, the Settlement Class is composed of approximately 619 Product Specialist and BAC subclass members and 151 Site Support Specialist subclass members, which is sufficiently numerous.

**C.    Common Questions of Law and Fact Bind the Class**

Rule 23(a) requires that there be a common question of law or fact. There is no requirement that the members of the class be identically situated, only that there exists one or more factual or legal questions common to all members. Jenson v. Continental Fin. Corp., 404 F. Supp. 806 (D. Minn. 1975). This threshold of "commonality" is not particularly high. Jenkins v. Raymark Ind.,

1  Inc., 782 F.2d 468, 472 (5th Cir. 1986).  The fundamental question is whether the resolution of the

2  common legal or factual questions would affect all or a substantial number of the class members.

3  Jenkins, supra, 782 F.2d at 472.  Indeed, if a claim "arises out of the same legal or remedial theory,

4  the presence of factual variations is normally not sufficient to preclude class action treatment."

5  Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

6       Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action affects

7  all class members, and at least one of the elements of that cause of action is shared by all of the class

8  members." Lockwood Motors, 162 F.R.D. at 575.  This requirement is met if common questions of

9  liability are present, even if there may be individual variations.  In re Workman's Comp., 130

10  F.R.D. 99, 104 (D. Minn. 1990).

11       Here, common questions of law and fact, as alleged by the Plaintiffs, are present, specifically

12  the question of whether the BAC/Product Specialist and the Site Support Specialist employees

13  employed by Kaiser are "exempt."  Kaiser does dispute that commonality actually exists, but will

14  not oppose such a finding for purposes of this settlement only.

15

16  **D.    The Claims of the Plaintiffs Are Typical of the Class Claims**

17       The typicality requirement of Rule 23(a) requires the Plaintiffs to demonstrate that the

18  members of the class have the same or similar claims as the named Plaintiffs.  "The typicality

19  requirement is met when the claims of the named Plaintiff arise from the same event or are based on

20  the same legal theories." Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983).  In Hanlon

21  v. Chrysler Co., 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's

22  permissive standards, representative claims are 'typical' if they are reasonably coextensive with those

23  of absent class members; they need not be substantially identical." 50 F.3d at 1020.  Typicality

24  "does not mean that the claims of the class representative[s] must be identical or substantially

25  identical to those of the absent class members." Stanton, supra, at 957.

26       In the instant case, there can be little doubt that the typicality requirement is fully satisfied.

27  The Plaintiffs, like every other member of the Class, were employed by Kaiser and classified as

28

"exempt" by Kaiser.  The Plaintiffs, like every other member of the Class, claim unpaid overtime wages for work performed in the same job classifications.  Thus, the claims of both the Plaintiffs and the Members of the Class arise from the same course of conduct by the Kaiser, involve the same work performed in connection with the HealthConnect computer systems, and are based on the same legal theories. The typicality requirement of Rule 23 is met as to the common issues presented in this case.  Each subclass is represented by a plaintiff who is a member of the subclass.  While Kaiser disputes that Plaintiffs have claims typical of the individuals they purport to represent, it will not oppose a finding of typicality for purposes of this settlement only.

### E.    The Class Representatives Have Fairly and Adequately Protected the Interest of the Class

The Class Representatives provided adequate representation of the interests of the class in that: (a) their attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representatives do not have interests antagonistic to those of the class.  White v. Local 942, 688 F.2d 85, (9th Cir. 1982).  Simply put, Rule 23 asks whether the Class Representatives will vigorously prosecute on behalf of the class and have a basic understanding of the claims.  This requirement has been met here.  First, Plaintiffs are well aware of their duties as representatives of the class and have actively participated in the prosecution of this case to date.  They effectively communicated with counsel, providing documents to counsel and participated extensively in discovery and investigation of the Action.  Second, the Plaintiffs have retained competent counsel who have extensive experience in consumer class actions.  See Decl. Blumenthal at ¶31; Decl. Qualls, ¶13.  Class Counsel has extensive experience in class action litigation in California and throughout the country.  Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions.  See, e.g., Resumes, attached collectively, as Exhibit "B" to the Declaration of Blumenthal.  Third, there is no antagonism between the interests of the named Plaintiffs and those of the Class.  Both the Plaintiffs and the Members of the Class seek monetary relief under the same set of facts and legal theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  In re Wirebound Boxes Antitrust Lit., 128 F.R.D. 268 (D. Minn. 1989).

1    While Kaiser disputes that the Plaintiffs are adequate class representatives, Kaiser does not oppose

2    such a finding for purposes of this settlement only.

3        **F.**     **The Additional Requirements of Rule 23 Are Satisfied**

4           Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule

5    23(b)(3) in order to determine whether a class should be maintained under one of the listed

6    categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.

7    First, common questions must predominate over individual issues, and second, the class action must

8    be superior to other available other methods for the fair and efficient adjudication of the

9    controversy.

10             **1.**     **The Predominance Requirement Is Met**

11           Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions

12    of law and fact common to the members of the class predominate over any questions affecting only

13    individual members."  There is no bright line to determine whether common issues predominate.  A

14    claim will meet the predominance requirement in cases where generalized evidence of the

15    Defendants' conduct will prove or disprove an element of the claim on a simultaneous class-wide

16    basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common

17    legal grievance." Lockwood Motors, 162 F.R.D. at 580; Buchholtz v. Swift & Co., 62 F.R.D. 581,

18    598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be

19    determined on an individual basis does not preclude the satisfaction of the predominance

20    requirement.  See Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

21           Here, the adjudication of the common issues surrounding Kaiser's uniform and systematic

22    acts could establish Kaiser's liability on a class-wide basis.  Plaintiffs contend that Kaiser had

23    engaged in a uniform course of conduct with respect to the Settlement Class; the only question is

24    whether Kaiser's conduct supports a meritorious claim.  Such suits challenging the legality of a

25    standardized course of conduct are generally appropriate for resolution by means of a class action.

26    Accordingly, Plaintiffs would argue that the common issues of law and fact present in this case

27    predominate.

28

1    In the context of overtime pay litigation, courts have often found that common issues

2    predominate where an employer treats the putative class members uniformly with respect to

3    compensation, even where the party opposing class certification presents evidence of individualized

4    variations. For example, in <u>Wang v. Chinese Daily News</u>, 231 F.R.D. 602, 613 (C.D. Cal. 2005),

5    the court held that the defendant "cannot, on the one hand, argue that all [putative class members]

6    are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the

7    job duties of each [putative class member] in order to determine whether that individual is

8    'exempt.'" See also <u>In re Wells Fargo Home Mortg. Overtime Pay Litig.</u>, 2007 U.S. Dist. LEXIS

9    77525 (N.D. Cal. October 17, 2007) at *17-18; See also <u>Tierno v. Rite Aid Corp.</u>, 2006 U.S. Dist.

10   LEXIS 71794, (N.D. Cal. Aug. 31, 2006), in <u>Krzesniak v. Cendant Corp.</u>, 2007 U.S. Dist. LEXIS

11   47518,(N.D. Cal. June 20, 2007) (where a putative class action plaintiff challenges a policy of

12   classifying all employees of a given title as exempt, individualized inquiries into the job duties of

13   each employee are not necessary to determine whether each employee is exempt).

14   While Kaiser disputes that the predominance requirement may be satisfied, it will not

15   oppose such a finding for purposes of this settlement only.

16            **2.      The Superiority Requirement Is Met**

17   To certify a class, the Court must also determine "that a class action is superior to other

18   available methods for the fair and efficient adjudication of the controversy." F.R.C.P. Rule 23

19   (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote

20   greater efficiency, a class action may be superior to other methods of litigation." <u>Valentino v.</u>

21   <u>Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996); <u>In re Wells Fargo Home Mortg. Overtime</u>

22   <u>Pay Litig., supra</u>, 2007 U.S. Dist. LEXIS 77525 at * 33.

23   "If the plaintiffs' claims are substantiated, a question as to which the court presently has no

24   opinion, the class action mechanism is clearly the most efficient means of resolving the many claims

25   which may be asserted. If the case were not handled as a class, thousands of small claims would

26   either be brought or unjustly abandoned. The first possibility would be a flood of cases, the second

27   would involve individual claims abandoned because of cost." <u>In re Workers Compensation.</u>, 130

28   F.R.D. 99, 110 (D.Minn. 1990).

1    Here, a class action is the superior mechanism for adjudication of the claims as pled by the

2    Plaintiffs. While Kaiser disputes that the superiority requirement may be satisfied, it will not

3    oppose such a finding for purposes of this settlement only.

4    **VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

5    The Parties have agreed upon procedures by which the Class will be provided with written

6    notice of the Settlement similar to that approved and utilized in hundreds of class action settlements.

7    The Parties have jointly drafted a Notice of Preliminary Approval of the Settlement, attached to the

8    Blumenthal Declaration as Exhibit "A" and is hereby submitted to the District Court for Approval.

9    The Claims Administrator will mail individual Notices to the members of the Settlement Class via

10   first-class regular U.S. mail using the most current mailing address information available from

11   Kaiser's payroll records, which shall be updated by the Claims Administrator to correct for any

12   known or identifiable address changes.

13   The Notice, drafted jointly and agreed upon by the Parties through their respective counsel,

14   includes information regarding the nature of the Litigation; a summary of the substance of the

15   Settlement, including Kaiser's denial of liability; the definition of the Settlement Class; the

16   procedure and time period for objecting to the Settlement and participating in the Final Approval

17   hearing; a statement that the District Court has preliminarily approved the Settlement; and

18   information regarding the claims filing procedure and the opt-out procedure. See Exhibit A to

19   Stipulation of Settlement. The Notice will also include a calculation of the Class Member's

20   minimum share of the NFV. Attached to the Notice will be a Claim Form and Request for

21   Exclusion Form, in the forms attached to the Stipulation of Settlement as Exhibits "B" and "C"

22   respectively. The Claims Administrator shall include with the Notice a blank IRS Form W-9.

23   The costs associated with the mailing will be paid out of the Settlement Amount. The Claims

24   Administrator will mail a follow-up notice, twenty (20) days before the expiration of the claims

25   period encouraging Class Members to respond. The Claims Administrator shall disseminate the

26   settlement Notice and Claim Form to the Class, by U.S. mail, within ten (10) days of the entering of

27   the order granting preliminary approval of the Settlement.

28   The Notice shall state that Class Members who wish to participate in the settlement shall

1   complete and return the Claim Form pursuant to the instructions contained therein by first class mail

2   or equivalent, postage paid.  The Notice shall also provide that any Class Member may choose to

3   opt out of the Class, and that any such person who chooses to opt out of the Class will not be

4   entitled to any recovery obtained by way of the settlement and will not be bound by the settlement or

5   have any right to object, appeal or comment thereon.

6        The Notice will provide that all objections to the Settlement by anyone, including members

7   of the Settlement Class, must be filed in the District Court and served upon all counsel of record by

8   no later than forty-five (45) days from the mailing of the Notice of Preliminary Approval.  The

9   45-day period applies notwithstanding any argument regarding non-receipt of the notice.  All

10  objections must state with particularity the basis on which they are asserted.  Further, if any objector

11  intends to appear at the Final Approval hearing, either in person or through counsel, he or she must

12  include notice of that fact and state the purpose for his or her appearance in his or her objection.

13  The notice will provide that to opt out of the Settlement Class, a class member must file the Request

14  for Exclusion Form attached to the Notice within 45 days of the mailing date of the Notice of

15  Preliminary Approval of the Settlement (the "Opt-out Period").

16        This notice program was designed to meaningfully reach the largest possible number of

17  potential Class Members.   The mailing and distribution of the Notice satisfies the requirements of

18  due process, and is the best notice practicable under the circumstances and constitutes due and

19  sufficient notice to all persons entitled thereto.

20        This notice satisfies the content requirements for notice following the exemplar class notice

21  in the Manual for Complex Litigation, Second §41.43.  This notice also fulfills the requirement that

22  Class notices be neutral. Newberg,§8.39.

23  **VIII.    CONCLUSION**

24        Counsel for the Parties have committed substantial amounts of time, energy, and resources

25  litigating and ultimately settling this case.  In the judgment of Plaintiffs and Class Counsel, the

26  proposed settlement is a fair and reasonable compromise of the issues in dispute in light of the

27  strengths and weaknesses of each party's case.  After weighing the substantial, certain and

28  immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiffs believe

1  the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary

2  approval.

3       Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the

4  proposed settlements, certify the Class for settlement purposes, schedule a date for a hearing on

5  Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

6  Dated: July 21, 2008                    BLUMENTHAL & NORDREHAUG

7

8                                          By:   s/Norman B. Blumenthal
                                                  Norman B. Blumenthal
                                           Attorneys for Plaintiffs
9

10                                         QUALLS & WORKMAN
                                             Daniel H. Qualls (State Bar #109036)
                                             Robin G. Workman (State Bar #145810)
11                                         244 California Street, Suite 410
                                           San Francisco, CA 94111
12                                         Telephone: (415) 782-3660
                                           Facsimile: (415) 788-1028
13
                                           UNITED EMPLOYEES LAW GROUP
14                                           Walter Haines (State Bar #71075)
                                           65 Pine Ave, #312
15                                         Long Beach, CA 90802
                                           Telephone: (562) 256-1047
16                                         Facsimile: (562) 256-1006

17                                         SANFORD, WITTELS & HEISLER, LLP
                                             David W. Sanford (D.C. Bar #457933)
18                                           Stefanie Roemer (D.C. Bar #464450)
                                             Shayna Bloom (D.C. Bar #498105)
19                                         1666 Connecticut Avenue, NW, Suite 310
                                           Washington, D.C.  20009
20                                         Telephone: (202) 742-7777
                                           Facsimile: (202) 742-7776
21
                                           LAW OFFICES OF GRANT E. MORRIS
22                                           Grant Morris (D.C. Bar #926253)
                                           1666 Connecticut Avenue, N.W., Suite 310
23                                         Washington, D.C.  20009
                                           Telephone: (202) 742-7777
24                                         Facsimile: (202) 742-7776

25

26

27       G:\D\NBB\Louie v. Kaiser\Preliminary Approval\p-memo ISO motion-rev-7-16-08.wpd

28