# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LOUIE; VALERIE STRINGER; MARK STEELE; DAN ROYSE; JULIE TEAGUE; JERAHMEEL CAPISTRANO,<br><br>Plaintiff,<br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.; DOES 1 THROUGH 10,<br><br>Defendant. | CASE NO. 08cv0795 IEG RBB<br><br>**ORDER (1) PRELIMINARILY CERTIFYING CLASS FOR SETTLEMENT PURPOSES; (2) PRELIMINARILY APPROVING SETTLEMENT; (3) APPOINTING CLASS COUNSEL; AND, (4) APPROVING CLASS NOTICE PROGRAM** |

Presently before the Court is a joint motion by defendant Kaiser Foundation Health Plan ("Kaiser") and a class of Kaiser's former employees represented by plaintiffs Donna Louie, Valerie Stringer, Mark Steele, Dan Royse, Julie Teague, and Jerahmeel Capistrano (collectively, "Plaintiffs") seeking (1) preliminary certification for settlement purposes, (2) preliminary approval of the settlement, (3) appointment of class counsel, and (4) approval of the class notice program.

## BACKGROUND

**I.   Factual Background**

Plaintiffs, and the putative class members, worked for Kaiser as Product Specialists, Business Application Coordinators ("BACs"), and Site Support Specialists on the Kaiser Permanente HealthConnect computer system. Kaiser installed the Health Connect system as part of a procedure

called "GoLive," which ensured Kaiser facilities used a common software system.

During GoLive, Kaiser intermittently deployed Plaintiffs to facilities in California. During deployments, Plaintiffs frequently missed meal breaks, worked more than eight hours per day, and worked more than forty hours per week. Often, Kaiser required the Plaintiffs to work five to six workdays per week, extending up to thirteen hours per day. Kaiser also required Plaintiffs to participate in "Technical Dress Rehearsals," which Kaiser scheduled during meal periods, early in the morning, or late in the evening to minimize interference with hospital staff. This caused Plaintiffs' workday to exceed eight hours, for which they did not receive overtime compensation.

Furthermore, Kaiser required plaintiffs employed as Site Support Specialists to periodically remain "on-call" for seven consecutive days. During their on-call week, Kaiser required Plaintiffs to remain available twenty-four hours per day and to respond to technical support calls within thirty minutes. The Plaintiffs did not receive overtime compensation for the time spent "on-call."

Since October 4, 2003, Kaiser has not compensated Plaintiffs for overtime or missed breaks, claiming Plaintiffs are exempt from overtime under state and federal law because they are "executive, administrative, or professional" employees. Plaintiffs dispute this classification. In total, the proposed class is comprised of 619 Product Specialists and BACs and 151 Site Support Specialists. The total claim for withheld overtime and missed meal or rest breaks is approximately $6,016,568.39.

**II.     Procedural Background**

Although the Plaintiffs filed this settlement agreement for approval in this case, it is actually the settlement of three related class actions.

In May 2008, Donna Louie filed this action. (Doc. No. 1.) Kaiser allegedly misclassified a class of Site Specialists as exempt from overtime under California and federal law. Plaintiffs initiated similar suits on behalf of Product Specialists and BACs in California state court and in the Northern District of California. <u>Valerie Stringer v. Kaiser Permanente, et al.</u>, Case No. RG 07349734 (Cal. October 4, 2007); <u>Mark Steele, et al. v. Kaiser Found. Health Plan, Inc.</u>, Case No. 3:07-cv-05743 (N.D. Cal. November, 13 2007). In order to coordinate all lawsuits for the purposes of requesting Court approval of the settlement, the parties agreed to dismiss the <u>Stringer</u> and <u>Steele</u> actions. Louie then filed the First Amended Complaint, incorporating the <u>Stringer</u> and <u>Steele</u> plaintiffs. (Doc. No. 3.)

Plaintiffs allege Kaiser violated state and federal law by failing to pay overtime wages and not providing meal or rest breaks for the Product Specialists, Business Application Coordinators, or Site Specialists. Plaintiffs allege Kaiser misclassified members of the putative class as exempt under California Labor Code § 515.5 and industrial Welfare commission Wage Order 4-2001. Furthermore, Plaintiffs allege Kaiser improperly classified class members as exempt under federal law. Fair Labor Standards Act, 29 U.S.C. § 213 (2000); 29 C.F.R. 541. Both the federal and state laws exempt employees who work in an "executive, administrative, or professional" capacity.

Plaintiffs now move for (1) certification of the settlement class, (2) preliminary approval of the settlement, (3) appointment of class counsel, and (4) approval of the class notice program.

### III.  The Proposed Settlement

Counsel for the parties agreed to a settlement which includes all persons employed by Kaiser as (a) Product Specialists; (b) Business Application Coordinators ("BAC"); and (c) Site Support Specialists within the state of California during the period from October 4, 2003 through the date of the preliminary approval of the Settlement. The parties submitted to mediation before Anthony A. Piazza, a mediator of wage and hour class actions. (Decl. Blumenthal ¶5; Decl. Qualls.) As a result of the daylong negotiation, the parties reached a settlement. Id.

Kaiser agrees to pay $5.4 million to discharge all claims in this action on a claims-made basis ("Gross Fund Value"), without a reversion to Kaiser except for payment of taxes. (Decl. Blumenthal ¶3.) Before the $5.4 million is distributed to class members, the Claim Administrator will first pay Class Counsel's attorneys' fees and costs, incentive awards for the class representatives, PAGA payments, cost of class notice, and claims administration, leaving a Net Fund Value.

Each participating Settlement Class Member will be entitled to a share of the Net Fund Value. The class will be broken into two subclasses: BAC/Product Specialist Subclass and Site Support Specialist Subclass. The BAC/Product Specialist Subclass shall be allocated 59.36% of the Net fund value and the Support Specialist Subclass shall be allocated 40.74%. The Claims Administrator will determine each class member's share of the net fund by dividing the number of qualifying work weeks attributable to the class member by the total weeks worked by all members of the subclass.

Kaiser will additionally pay any required employer payroll taxes owing on the portion of the

1  Gross Fund Value allocated to the wages. The Settlement provides for a claims process requiring
2  Kaiser to pay each timely and validly submitted claim.
3        The settlement further provides for attorneys' fees totaling 25% of the Gross Fund Value
4  ($1,350,000). Counsel will also recoup up to $100,000 for reasonable litigation costs.
5        Each class representative will receive an incentive award of $25,000 per named plaintiff in
6  addition to their individual claim to the Net Fund Value.
7        The settlement allocates $50,000 for costs of the Claim Administrator and $33,333.33 to pay
8  the PAGA Settlement. Kaiser will deposit $5.4 million in an interest-bearing account within 15 days
9  of the preliminary approval and payment to class members will begin 15 days after final approval.
10       The parties agreed to the designation of the following firms as class counsel for the settlement
11 class: Qualls & Workman; Sanford, Whittles & Heisler, LLP; Law Offices of Grant E. Morris;
12 Blumethal & Nordrehaug; and United Employees Law Group.

## DISCUSSION

14 When evaluating a motion for preliminary approval of a settlement for a class action, the Court
15 must first, determine whether a class exists and second, assess whether the settlement is
16 "fundamentally fair, adequate, and reasonable." Stanton v. Boeing Company, 327 F.3d 938, 952 (9th
17 Cir. 2003). The Court addresses the class certification, then examines the settlement agreement, and
18 finally turns to the questions of class counsel and class notice.

19 **I.  Class Certification**

20 The parties seek, under Federal Rule of Civil Procedure 23(b)(3), to certify a class they define
21 in the settlement agreement:

22      All persons who, at any time between October 4, 2003 and preliminary
   approval of the settlement, worked for Kaiser Foundation Health Plan,
23  Inc. in California in connection with KP HealthConnect in the positions
   of Product Specialist, Business Application Coordinator ("BAC") or
24  Site Support Specialist.

25 (Decl. of Norman B. Blumenthal, Exhibit A at 3.) The parties divide the class into two subclasses:
26 one subclass of BACs and Product Specialists and a second subclass of Site Support Specialists.
27 A plaintiff seeking Rule 23(b)(3) certification must first satisfy the prerequisites of Rule 23(a).
28 If subsection (a) is satisfied, Plaintiffs must then fulfil the Rule 23(b)(3) requirements. The general

1  requirements of Rule 23(a) as well as the more specific requirements of Rule 23(b)(3) are addressed
2  in turn.

3  **A.      Rule 23(a) Requirements**

4  Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2)
5  commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); see Stanton
6  v. Boeing Company, 327 F.3d 938, 953 (9th Cir. 2003).

7  *1.     Numerosity*

8  The numerosity prerequisite is met if "the class is so numerous that joinder of all members is
9  impracticable." Fed. R. Civ. P. 23(a)(1). There are 619 BAC/Product Specialists and 151 Site
10 Support Specialists involved in this litigation. They are far too numerous be joined as plaintiffs in this
11 lawsuit. The proposed class satisfies the numerosity requirement.

12 *2.     Commonality*

13 The commonality requirement is met if "there are questions of law or fact common to the
14 class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon
15 v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of law need not be common,
16 but rather "the existence of shared legal issues with divergent factual predicates is sufficient." Id.

17 The Plaintiffs have satisfied the commonality requirement. Kaiser's alleged misclassification
18 of BAC/Product Specialists and Site Support Specialists as "exempt" is the basis for the claims of both
19 the named plaintiffs and the proposed class. This misclassification is uniform across the class and
20 satisfies the commonality requirement.

21 *3.     Typicality*

22 Typicality requires the members of the class have the same or similar claims as the named
23 plaintiffs. Fed. R. Civ. P. 23(a)(3). However, it is "not necessary that all class members suffer the
24 same injury." Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 734 (9th Cir. 2007).

25 In the instant case, Plaintiffs satisfy the typicality requirement. The claims of both the named
26 plaintiffs and the members of the class arise from Kaiser's conduct, involve similar work performed
27 in connection with the HealthConnect computer systems, and originate from the same legal theories.
28 Furthermore, each subclass is represented by a plaintiff who is a member of the subclass.

*4.     Adequate Representation*

This Circuit finds representation adequate if (1) the plaintiffs "do not have conflicts of interest with the proposed class" and (2) "[p]laintiffs are represented by qualified and competent counsel." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007). The heart of this requirement is the concern over settlement allocation decisions. Hanlon, 150 F.3d at 1020 .

In this case, there appears to be no allocation issue and counsel is qualified and competent. The allocation is reasonable because the distribution is based on the salary of the positions and the average number of hours worked. Class counsel has extensive experience in more than two hundred class action matters, including many wage and hour class actions. (Decl. Blumenthal, ¶ 31; Decl. Qualls, ¶ 13.) The Plaintiffs have satisfied the Rule 23(a) requirements.

**B.     Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires (1) finding common issues of law or fact predominate over individual issues and (2) finding class action is the superior method to fairly and efficiently adjudicate the controversy. These requirements can be labeled the "predominance" and "superiority" requirements.

*1. Predominance*

Federal regulations apply the exemption to employees "primarily engaged in duties which meet the test of exemption." 29 C.F.R. 541.402. The issue is whether an individual inquiry is necessary to determine whether each plaintiff was "primarily engaged" in any duty meeting an exemption.

Predominance requires more than proof of common issues of law or fact. The common questions must "'present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication.'" Hanlon, 150 F.3d at 1022 (citation omitted).

In similar cases, common claims predominate when plaintiffs allege "(a) company-wide policies governing how employees spend time, or (b) uniformity in work duties and experiences that diminish the need for individualized inquiry." Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637, 640 (S.D. Cal. 2007). For example, an individualized inquiry was unnecessary when plaintiffs challenged a policy classifying all employees of a given title as exempt. Krzesniak v. Cendant Corp., 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007). Similarly, common claims predominated when a defendant's compensation and exemption policy was uniform among the class. In re Wells

1  Fargo Home Mortg. Overtime Pay Litig., 2007 U.S. Dist. LEXIS 77525 (N.D. Cal. October 17, 2007).

2  Here, the Plaintiffs had uniformity in work duties and experiences that diminish the need for an individualized inquiry. Members of the putative class had the same job titles, work duties, work experiences, and Kaiser uniformly applied the exemption to members of the class. Therefore, common questions predominate.

*2.    Superiority Requirement*

The Court must also determine "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The method is superior if "litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234.

Since all of the claims involve a relatively insubstantial amount of money, a class action is the superior method of adjudication.

**C.    Conclusion**

For the foregoing reasons, the Court **GRANTS** preliminary certification to the class for the purposes of settlement.

**II.    The Settlement**

**A.    Legal Standard**

Federal Rule of Civil Procedure 23(e)(1) requires the Court to determine whether a settlement is "fair, reasonable, and adequate." To make this determination, the Court considers certain factors: "(1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel." Stanton, 327 F.3d at 959 (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

**B.    Analysis**

Since the reaction of class members cannot be evaluated until the hearing for final approval of the settlement, the Court only addresses the other factors.

1. *The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Plaintiffs found two primary weaknesses in their case. First, they were uncertain whether the court would find the administrative exemption, as defined in two federal regulations, bars recovery. Specifically, the exemption includes "system analysts and computer programmers" if their primary duty includes planning or organizing "activities required to develop systems to solve complex . . . problems of the employer or customer." 29 C.F.R. § 541.402.   Furthermore, the exemption also includes "computer network, internet and database administration." 29 C.F.R. § 541.201(a)(b).

Additionally, Plaintiffs feared two federal decisions might persuade the Court to find Plaintiffs exempt.  In Bagwell v. Florida Broadband, the court found a network operation engineer exempt because of his primary duty to develop, improve, and ensure the reliability of a network.  2005 WL 1962562 (S.D. Fla. 2005).  In Koppinger v. American Interiors, Inc., the court found a plaintiff exempt because of his responsibility to maintain the company's computers.  295 F. Supp. 2d 797 (N.D. Ohio 2003).

Second, Plaintiffs worried the class would not be certified due to a predominance problem. In Dunbar v. Albertson's, the California Court of Appeal affirmed a denial of certification, finding the application of the executive exemption required an individual inquiry for each class member. 141 Cal. App. 4th 1422, 1431-32 (2006).

Based on these considerations and the issue with predominance already noted, this factor weighs in favor of preliminarily approving the settlement.

2. *The Amount Offered in Settlement*

In Glass v. UBS Financial Services, the court recently approved a settlement of an action for unpaid overtime wages constituting approximately 25 to 35% of the estimated actual loss. 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007).

Here, the claims against Kaiser totaled $6,016,568.39. The settlement payment of $5,400,000 constitutes 89.75% of the subject claims. Even after deducting PAGA payments, attorneys' fees and costs, and class representative incentive awards the Net Fund Value is still $3,725,000 or 62% of full recovery.  This factor weighs toward finding the settlement is fair, reasonable, and adequate.

3.   *The Extent of Discovery Completed and the Stage of the Proceedings*

Class Counsel has not completed extensive formal discovery in this proceeding. However, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1239 (9th Cir. 1998)(quoting In re Chicken Antitrust Litig., 669 F.2d 223, 241 (5th Cir. 1982).

Class counsel has conducted extensive informal discovery and has sufficient information to make an informed decision about settlement. Class counsel served interrogatories, inspection demands, and notices of depositions to Kaiser. (Decl. Qualls, ¶¶ 3-8, 10.) Kaiser provided records and data in response to Plaintiffs' discovery requests; including, data regarding periods of employment, pay rates, work schedules, and work weeks. Id. Plaintiffs had sufficient time to examine the records and submitted the records to a class action damage analysis expert for review. Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.

4.   *Experience and Views of Counsel*

As previously noted, class counsel has extensive experience in over two hundred class action matters, including many wage and hour class actions. (Decl. Blumenthal, ¶ 31; Decl. Qualls, ¶ 13.) Counsel believes the settlement is fair and adequate, which weighs in favor of preliminary approval.

5.   *Collusion Between the Parties*

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Stanton, 327 F.3d at 960. Because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action. Id. The aspects of the settlement susceptible to self-interested misconduct are the distribution between the two subclasses, the Class Representative incentive awards, and attorneys' fees.

The distribution between the two subclasses does not appear to be the result of collusion between the parties. The class is divided into two subclasses with the Site Support Specialist subclass receiving 40.74% of the settlement and the BAC/Product Specialist subclass receiving 59.26%. This

1  distribution balances the larger number of workweeks allocable towards the BAC/Product Specialist
2  subclass with the greater amount of overtime worked by the members of the Site Support Specialists.
3  This reasonable balancing indicates an absence of collusion between the negotiating parties.

4  The $25,000 incentive award for each Class Representative also does not to appear to be the
5  result of collusion.  The Court evaluates incentive awards using "relevant factors includ[ing] the
6  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has
7  benefitted from those actions, ...  [and] the amount of time and effort the plaintiff expended in
8  pursuing the litigation ...." Stanton, 327 F.3d 938, 977 (9th Cir. 2003) (quoting Cook v. Niedert, 142
9  F.3d 1004, 1016 (7th Cir. 1998).  Furthermore, a recent Northern District of California approved a
10 $25,000 incentive award in a similar case. Glass, 2007 U.S. Dist. LEXIS 8476.  In this case, Plaintiffs
11 have protected the interests of the class and exerted considerable time and effort by maintaining three
12 separate lawsuits, conducting extensive informal discovery, hiring experts to analyze discovered data,
13 and engaging in day-long settlement negotiations with a respected mediator.  The class has benefitted
14 from these actions by receiving a settlement constituting almost ninety percent of the original claim.
15 For these reasons, the incentive award does not appear to be the result of collusion.

16 Finally, the attorneys' fees also do not appear to be the result of collusion.  Plaintiffs may
17 simultaneously negotiate the merits and attorneys' fees. Stanton, 327 F.3d at 971.  In wage and hour
18 cases "[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases."
19 Hopson v. Hanesbrands Inc., 2008 WL 3385452 at *3. (N.D. Cal. 2008) (citing Hanlon, 150 F.3d at
20 1029).  Given this benchmark, these fees seem reasonable and not the result of collusion.

21 **C.  Conclusion**

22 For the foregoing reasons, the Court **GRANTS** preliminary approval of the settlement.

23 **III.  Appointing Class Counsel**

24 Traditionally, the choice of counsel has been left to the parties, whether they sue in their
25 individual capacities or as class representatives. In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002).

26 Plaintiffs' counsel appear to be competent to represent the class in the instant case.  All firms
27 involved have extensive experience in class action and wage and hours litigation.  As a result, the
28 court **GRANTS** Plaintiffs' motion to appoint the following firms as class counsel:  Qualls &

Workman; Sanford, Whittles & Heisler, LLP; Law Offices of Grant E. Morris; Blumethal & Nordrehaug; and United Employees Law Group.  See 15 U.S.C. § 78u-4(a)(3)(B)(v).

**IV.    Class Notice**

The class notice must (1) be "reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and (2) must satisfy the content requirements of Rule 23(c)(2)(B).  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.

Here, the proposed method of notice is reasonable.  The Claims Administrator will mail individual Notices to the members of the settlement class via first-class regular U.S. mail using the most current mailing address information available from Kaiser's payroll records.  Additionally, the Claims Administrator will reasonably update any out-of-date records of which she is aware.

The content of the notice is also adequate.  The notice includes all necessary information about the litigation.  Accordingly, the Court **GRANTS** approval of the proposed class notice.

## CONCLUSION

The Court **GRANTS** the parties' motion for (1) preliminary certification of the class for settlement purposes; (2) preliminary approval of the settlement; (3) appointment of class counsel; and (4) approval of class notice program.

**IT IS SO ORDERED.**

**DATED: October 6, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**